# EXHIBIT 1

Howard M. Cooper

████████████████████

October 30, 2015

**By Hand**

████████, ████████████████
State Ethics Commission
One Ashburton Place, Room 619
Boston, Massachusetts 02108

2015 OCT 30   PM 3: 10
RECEIVED
STATE ETHICS COMMISSION

    Re:   **Senator Brian A. Joyce**

Dear ████.

    Thank you for your patience as we gathered information in order to respond to the requests set forth in your September 22, 2015 letter, as well as your more recent October 21st email. Particularly with regard to the documents requested in your September 22nd letter, as I had expected, there were significant attorney-client privilege issues which needed to be considered carefully, and which we may need to discuss further, as indicated below.

    The Commission's requests make clear its' interest in certain aspects of Senator Joyce's legal work for, and relationship with, ████████ Because it will be easier for the Commission to understand the specifics of what it is looking for in the context of the overall relationship between Senator Joyce's firm and any ████████ affiliate, as well in the context of Senator Joyce's overall law practice, the below disclosure goes somewhat beyond the information sought by the Commission. I hope and trust that the Commission will find this helpful.

    Please note at the outset that ████████ is a holding company. The legal work performed by Senator Joyce and his firm has been (and remains) for ████████████ Inc. When I refer to ████ in this letter, I am referring to ████████████ Inc. The sole limited exception to this is in the last section which responds to your questions based upon information you state the Commission has received about Senator Joyce's stock ownership in the holding company, ████████.

    As you will see, for ease of reference, the work done by Senator Joyce and his law firm is divided below into categories. Please understand that this disclosure is being made with a full reservation of the attorney-client privilege.

████████████████████████████████████████
████████████████████████████████████
████████████████████████████

---

[1]    Please note that when I refer to Senator Joyce's firm, I mean to include each of the law firms with which he has been associated during the relevant time period: Joyce and Cetkovic LLC, which became Joyce and Curran, LLC, and Brian A. Joyce, Attorney At Law, P.C., which is also referred to as The Joyce Law Group.



**Division of Insurance** - From stories appearing in at least one media outlet, I understand that the Commission is interested in Senator Joyce's interactions with the Division of Insurance ("DOI") relative to any ▇ related matter. Senator Joyce provides the following information in this regard.

It is my understanding that on or about June 3, 2013, Senator Joyce attended a meeting with DOI Commissioner ▇. Others in attendance included ▇ outside legal counsel, Attorney ▇, and ▇ Chief Executive Officer, ▇. I am informed that prior to his engagement as legal counsel by ▇ Attorney ▇. The purpose of the meeting with Commissioner ▇ was for ▇ itself, through Attorney ▇, to bring to the attention of the DOI that an insurance company, ▇, had filed a complaint against ▇ with the Ohio Insurance Division and to share the details of the complaint with the DOI. ▇ had not been notified that there was any actual proceeding opened and pending yet in Massachusetts at the time. Because ▇ is a licensed, Massachusetts headquartered insurance related entity, the company wanted Massachusetts regulators to hear about the Ohio complaint from the company itself first, to the extent possible. As Senator Joyce understood and believed, the meeting and his role in it, was simply to provide notice to the Massachusetts regulators that ▇ had initiated a complaint against ▇ in Ohio. As a result of this understanding, Senator Joyce appropriately believed that his attendance at the meeting was ministerial in nature.



I am informed that at the outset of the meeting, Senator Joyce stated to all in attendance, including Commissioner ████, that he did not and would not be representing ████ in the ████████████ matter pending in Ohio (or anywhere else) and that Attorney ████ was and would be acting as legal counsel to ████ on all matters relating to the ████████████ dispute.

Senator Joyce, of course, had sought and received advice from the Commission in connection with other similar prior matters, including with regard to his ability to attend ministerial type meetings such as the one he attended on June 3, 2013. As a result of the guidance he had sought and received from the Commission in the past, at all times then and now, Senator Joyce understood and believed his attendance at the meeting was appropriate. Indeed, given the ministerial nature of his interaction, Senator Joyce's firm did not open a new billing matter and did not charge any client a fee for attending the meeting.

Approximately a month after the meeting, Commissioner ████ forwarded to Senator Joyce a letter which Commissioner ████ had apparently received from a third party concerning ████████████. Senator Joyce believes Attorney ████ similarly received a copy of the letter from Commissioner ████, but he has not yet been able to confirm that fact. Upon receipt of the letter from Commissioner ████, Senator Joyce sought to confirm that no action on his part was being sought relative to the letter. Commissioner ████ confirmed that no action was being sought or required from Senator Joyce. This further confirmed in Senator Joyce's mind the ministerial nature of the prior interaction.

On or about September 17, 2014, Senator Joyce inquired of Commissioner ████ by email about the process by which ████ could obtain a letter of good standing from the DOI. Senator Joyce regarded this request too as ministerial in nature. Likewise, and as with his other interactions with the DOI relative to ████ his firm did not open a separate billing matter nor did the firm charge any client for this brief activity.

In the same email string, Senator Joyce discussed the possibility of his meeting Commissioner ████ for a cup of coffee. The invitation was personal in nature as Senator Joyce understood that Commissioner ████ would soon be leaving the DOI after many years of public service. The two never ended up getting together.

████████ – During the time period from January 1, 2010 to the present (or at any other time), ████ has not been a paying client of Joyce Law Group.

the time periods referenced. Accordingly, in the interest of being fully cooperative, Senator Joyce provides the following information.

In or about the second half of 2014, ███ issued a Private Placement Memorandum through which it made available to many parties the opportunity to purchase stock in the company. Senator Joyce did not personally participate in the private placement opportunity. However, he did direct his retirement account "Brian A. Joyce SEP IRA" to purchase stock in late 2014 and again in 2015. Senator Joyce believes the following is the correct chronology: At some point prior to September 10, 2014 (the precise date which Senator Joyce cannot recall), Senator Joyce initiated a purchase of stock by his IRA to be completed at a date in the future unknown to him given that the stock is not publicly traded. On September 22, 2015, Senator Joyce received a letter notifying him that his IRA had completed the purchase of 7,000 shares of ███ with an issuance date of September 10, 2014 at a price of $7.25 per share (the amount reflected in the Private Placement Memorandum) for a total investment of $50,750. See Tab H. To the best of his memory, Senator Joyce did not receive (or see) the letter (sent by Fed Ex on Friday, September 19, 2014 but apparently without a Saturday delivery) until Monday, September 22, 2014. Only at that time did he learn that the stock purchase by his IRA had been completed.

Thereafter, on or about February 4, 2015, Senator Joyce received a similar notification that his IRA had purchased (or "rolled-over") an additional 30,000 shares in ███ at the same $7.25 per share price for a total additional investment of $217,500 with an effective date of issuance of January 19, 2015. See Tab I.

Senator Joyce's IRA continues to hold these shares. At no time did his IRA seek to sell them in whole or in part. Where the stock is not publicly traded and where his IRA has not sought to sell any shares, Senator Joyce cannot reliably know the fair market value of the stock beyond the amount his IRA purchased it for as confirmed on the above dates. ███ did not, to Senator Joyce's knowledge, reject any attempt by Senator Joyce (or his IRA) to purchase stock in the company. Likewise, neither Senator Joyce nor his IRA sought to purchase $500,000 of additional ███ Inc. stock and he is unaware of any checks being returned to him by ███ related to his attempted purchase of additional stock in the company.

Finally, it bears noting that with regard to any holdings of ███ stock, Senator Joyce's campaign disclosures have complied with Massachusetts law. I am informed that, as with other matters, Senator Joyce sought and received guidance from the Commission before making his 2014 Statement of Financial Interest with regard to any necessary disclosure of stock holdings held by his retirement account and that the Commission's guidance was that any such holdings need not be disclosed.