# EXHIBIT 4

Howard M. Cooper

February 5, 2016

**VIA ELECTRONIC** ▮▮▮▮▮▮▮▮▮▮)
**AND FIRST CLASS MAIL**

▮▮▮▮, ▮▮▮▮▮▮▮▮
State Ethics Commission
One Ashburton Place, Room 619
Boston, Massachusetts 02108

    Re:    **Senator Brian A. Joyce**

Dear ▮▮▮▮:

    This will respond to the additional questions you asked regarding Senator Joyce's representation of ▮▮▮▮▮▮▮'s ▮▮▮▮ ▮▮▮▮ store in ▮▮▮, MA in connection with traffic-related issues which followed the construction of a drive-thru at the premises (the permitting for which Senator Joyce's firm had previously handled). As always, I appreciate your patience while I gathered responsive information.

    As I understand your questions, the Commission seeks contemporaneous documentation of the work done in late 2013 and early 2014 for which the client was not charged and in exchange for which Senator Joyce received coffee; the hourly rate at which the work would otherwise have been billed; and the total amount of uncharged legal fees. Subject to the constraints of the attorney-client privilege and doctrine of work product, Senator Joyce provides the following information:

    **Documentation** – Attached hereto at <u>Tab A</u> are a series of non-privileged email communications involving Senator Joyce and representatives of the Town about the issues which arose from the drive-thru. Please note that this documentation is not exhaustive. There are privileged communications between Senator Joyce and his client and with an expert which I am not providing based upon the attorney-client privilege and work product doctrine. Hopefully, the emails provided, in combination with the time summary set out below, will be enough to provide the Commission with the context and scope of the work done without charge. I also note that there is substantial additional documentation in the file including things such as traffic studies, plans and engineering materials which were part of the permit application file. I am not providing this information because it was not created during the relevant time period but comprise at least some of the materials Senator Joyce had to go back and review when the later issues arose. These materials are not privileged (they are publicly available) and if you would like to review them please let me know.

█████

February 5, 2016
Page 2 of 3

    I also ask that you note that to the best of Senator Joyce's memory he would have received the coffee from ██ ██████ around the holidays. At the time, the traffic issue had arisen but had not yet been resolved. As a result, when Senator Joyce agreed not to charge the client because the client had given him the coffee, he did so based upon his best guess of the amount of additional time he would have to spend on the matter (although he had already spent several hours). As it turned out, and as set forth below, Senator Joyce believes that the value of the services he provided exceeded the value of the coffee he received. Please understand that given his relationship with ██ ██████ and his business, Senator Joyce was not looking to keep score of the value with precision. This can more accurately be described as a very friendly exchange between counsel and a long-standing client.

    **Time Spent on Matter and Billable Rate** – The following is a schedule of Senator Joyce's reconstructed time entries and estimates during the relevant time period:

████ ████
████, MA

11/21/13
BAJ[1] received and reviewed email and letter from Planning Board re: letter board sent to police chief concerning traffic issues; reviewed file to review background concerning traffic issue; forwarded email to police chief requesting meeting - .50 hr.

12/10/13
BAJ met with ██████████, ██████████ and others at █████ to discuss traffic issues at the store since installation of drive-thru; reviewed traffic study and special permit in anticipation of meeting - 3.5 hrs.

1/15/14
Email from ██████████ to BAJ re: weekend traffic at ██ drive-thru; telephone conference and email with ██████████ re: [PRIVILEGED]. - .25 hr.

2/3/14
BAJ drafted detailed written response to Planning Board re: traffic issues and mitigation; forwarded same via email to ██████████ for comment; communication with █████ re: [PRIVILEGED]; forwarded email to ██████████ re: status of response to board concerning traffic issues - 1.5 hr.

    Senator Joyce's billing rate for this matter was ████ per hour making the services reflected in the time entries billable at ████████. As it has turned out, even after February, 2014 Senator Joyce has been contacted from time to time by Town officials about ongoing compliance type issues at the store. For example, attached at <u>Tab B</u> are communications from

---

[1] Please note that "BAJ" reflects Senator Joyce's billing shorthand for "Brian A. Joyce."

February 5, 2016
Page 3 of 3

2015 with regard to the donation of trees to the Town.  Senator Joyce and his firm have not billed for any time spent dealing with these issues as Senator Joyce regards them to be part of the exchange he made with ▮▮▮▮▮▮▮ when he received the coffee.

**Coffee Received** – Senator Joyce understood and believes that he received approximately 75 bags of coffee, although is not completely sure of the number, and did not count the bags as he was giving them away as gifts to others.  He understood at the time that they had a retail value of no more than $7.99 per bag.  Based upon his understanding of the quantity of coffee received and its retail value, Senator Joyce has always understood that the services he provided exceeded the value of any coffee he received.

Please do not hesitate to contact me if you have any further questions.

Very truly yours,

Howard M. Cooper

HMC/ckb
Enc.
cc:   Senator Brian A. Joyce
      David H. Rich, Esq.