# **<u>EXHIBIT B</u>**

1                  UNITED STATES DISTRICT COURT

2                  DISTRICT OF MASSACHUSETTS

3                              No. 1:16-mc-91381-WGY

4

5

6

7    IN RE GRAND JURY PROCEEDING

8

9

10

11                       * * * * * * * * *

12

13              For Lobby Conference Before:
                   Judge William G. Young

14

15              Motion to Quash Subpoena

16

17              United States District Court
                District of Massachusetts (Boston)
                One Courthouse Way
18              Boston, Massachusetts 02210
                Thursday, March 30, 2017

19

20                       * * * * * * * *

21

22         REPORTER: RICHARD H. ROMANOW, RPR
                 Official Court Reporter
23            United States District Court
       One Courthouse Way, Room 5510, Boston, MA 02210
24              bulldog@richromanow.com

25

```
 1                   A P P E A R A N C E S

 2

 3     MARTIN F. MURPHY, ESQ.
          Foley Hoag, LLP
 4        155 Seaport Boulevard
          Boston, MA 02210
 5        (617) 832-1213
          Email: Mmurphy@foleyhoag.com
 6   and
       MAX D. STERN, ESQ.
 7        Todd & Weld, LLP
          One Federal Street
 8        Boston, MA 02110
          (617) 720-2626
 9        Email: Mdstern@toddweld.com
          For Petitioner
10

11     BRIAN E. MURPHY, ESQ.
       CHRISTIAN KILEY, ESQ.
12        Murphy & Vander Salm, LLP
          1 Mercantile Street, Suite 740
13        Worcester, MA 01608
          (508) 425-6330
14        Email: Murphy@mvsllp.com
          For Intervenor Plaintiff
15

16
       WILLIAM F. BLOOMER, ESQ.
17        United States Attorney's Office MA
          1 Courthouse Way, Suite 9200
18        Boston, MA 02210
          (617) 748-3644
19        Email: William.bloomer@usdoj.gov
          For Respondent
20

21

22

23

24

25
```

1            P R O C E E D I N G S

2            (In chambers, 3:00 p.m.)

3            THE CLERK:  Now hearing Miscellaneous Business

4    Docket 16-91381, In re grand jury proceeding.

5            THE COURT:  And would counsel identify

6    themselves starting with the U.S. Attorney.

7            MR. BLOOMER:  Good afternoon, your Honor,

8    William Bloomer on behalf of the United States.

9            MR. MARTIN MURPHY:  Good afternoon, your

10   Honor, Martin Murphy on behalf of Howard Cooper, who's

11   also here.

12           MR. STERN:  Max Stern on behalf of Mr. Cooper.

13           MR. BRIAN MURPHY:  I'm Brian Murphy on behalf

14   of Brian Joyce.

15           MR. KILEY:  Christian Kiley on behalf of

16   Mr. Cooper.

17           THE COURT:  Very well.

18        The hearing is sealed.  This is a matter that is

19   pending before the grand jury.

20        I've carefully reviewed these materials.  I don't

21   intend a long hearing in terms of argument because the

22   matter has been thoroughly briefed.  I have some

23   questions and, um, there may be some discussion, just so

24   we're clear, about how we're going to proceed.  But let

25   me just start with the most serious allegation that the

1    government makes and that is that the crime fraud

2    exception applies here.

3           Do you press that?

4                MR. BLOOMER:  Yes, sir.

5                THE COURT:  I'll hear you, briefly.

6                MR. BLOOMER:  Well, I think -- briefly will be

7    difficult, but I think that we've shown a reasonable

8    basis for this Court to find that Mr. Joyce used the

9    services of Mr. Cooper to foster a crime here and that

10   was set forth in my memo, the ongoing Hobbs Act

11   extortion conspiracy as well as the honest services

12   fraud.  And, Judge, I think you have to go through the

13   timeline and look at it closely.

14          So this is not a 1- or a 2-off thing, we're

15   dealing with, you know, a delivery of coffee in December

16   of 2013, and there's a delivery of coffee in December of

17   2014, this was going on, we've established, for the

18   better part of five years, that he's regularly getting

19   cases of coffee, he's getting business deals in exchange

20   for his, you know, official influence as a state

21   senator.

22          The Globe -- so that's been going on for a period

23   of five years.

24                THE COURT:  But that has to do with Mr. Joyce.

25   I mean various people who do various things that

1   arguably are violative of the law, they have attorneys,

2   I mean the Sixth Amendment allows them to have

3   attorneys.

4           MR. BLOOMER:  Right.

5           THE COURT:  You want into what otherwise

6   clearly would be privileged on the crime fraud

7   exception, which, at least as I interpret it, implicates

8   Mr. Cooper.

9           MR. BLOOMER:  No, I don't think it does, and I

10  don't allege that it implicates Mr. Cooper at all, the

11  crime fraud exception applies regardless of what

12  Mr. Cooper understood with Mr. Joyce, we look at the

13  client's intent, not Mr. Cooper's intent.

14          THE COURT:  Very well.

15          MR. BLOOMER:  And I have no information in my

16  possession right now to suggest at all that Mr. Cooper

17  was somehow involved in any of this.  We're focusing on

18  what Mr. Joyce did.

19      So Mr. Joyce -- and this is where I think it's

20  important to look closely at the timeline.

21      January 30th, 2015, there's a Globe article that

22  comes out about Mr. Joyce, um, it discusses his purchase

23  of some fairly lavish items.

24      March 2015, Mr. Cooper is retained by Mr. Joyce to

25  address the Globe article as well as the coffee matter.

1          September of 2015, the Ethics Commission reaches

2     out to Mr. Cooper about Mr. Joyce's receipt of the

3     coffee in December of 2013, December of 2014.

4          After that, Judge -- so we're talking 10 months

5     after Joyce has retained Mr. Cooper, 3 months after the

6     Ethics Committee has reached out to them about, you

7     know, the receipt of free coffee in exchange for his

8     influence as a state Senator, Joyce goes out and

9     convinces ███████████████████████ to lie to

10    the Ethics Commission.  Okay?  He says, "You tell them

11    that coffee that I received in December of 2013 was in

12    exchange for legal services that I provided with respect

13    to the Millis location.  I have e-mails to back it up to

14    show that I didn't charge for that."  Okay?  He even

15    meets with ██████████ later along and insists that

16    ████████████ -- and ██████████████ says "Hey, I don't

17    remember, I'll say I don't remember it," and Joyce says

18    "No, you have to tell them that this was coffee for

19    legal services."  This occurs after Mr. Joyce has

20    retained Mr. Cooper with respect to this matter.  He

21    then uses Mr. Cooper's services -- and I'm not saying

22    Mr. Cooper knows this at all, um, to facilitate and

23    conceal this ongoing crime.  He --

24               THE COURT:  How?

25               MR. BLOOMER:  Well, Mr. Cooper then files with

1    the Ethics Commission -- this is very much like **Dworsky**,

2    he files with the Ethics Commission the backdated

3    invoice, the backdated check --

4              THE COURT:  Which he's been given?

5              MR. BLOOMER:  Right.  Right.  The backdated

6    check, ████████████████████████████████████████████

7    ██████████████████████████████████████████████████

8    to the Ethics Commission to cover up for the crime.  So

9    he has --

10             THE COURT:  And so what do you want from

11   Mr. Cooper?

12             MR. BLOOMER:  Well, what we have is, um,

13   nothing.  All we have right now is what was put forth to

14   the Ethics Commission.

15             THE COURT:  What more do you want?

16             MR. BLOOMER:  Well, I think that under the

17   crime fraud exception, if -- and we have shown a

18   reasonable basis to show that Mr. Joyce used the

19   services of the attorney --

20             THE COURT:  And my question is "What do you

21   want?"

22             MR. BLOOMER:  We want to know what it is

23   besides what, um -- the attorney-client communications,

24   if we pierce that privilege, what it is that Mr. Joyce

25   said other than what was contained in those

1     representations to the Ethics Commission.

2               THE COURT:  Let me -- I analyze it a little

3     differently.

4               MR. BLOOMER:  All right.

5               THE COURT:  And let's, um -- let me put my

6     analysis out simply because I'm not at all sure that

7     Mr. Cooper's side goes along with this analysis.

8          Once -- let's go to 2016.  Once there's a federal

9     subpoena -- well, first of all, the attorney-client

10    privilege attaches without regard to the prospect of

11    litigation, it attaches when Mr. Cooper becomes

12    Mr. Joyce's attorney, back in 2015.  Once that federal

13    subpoena comes out in 2016, then the work product

14    privilege, on top of that, attaches because litigation

15    is very much in prospect.

16         Before that, while there are proceedings before

17    the state Ethics Commission, it appears to me that

18    Mr. Cooper is retained, as attorneys frequently are

19    retained, um, both to give legal advice, but also to

20    represent the client to state administrative agencies

21    and indeed to the public, and it appears from these

22    papers that the instructions -- and I don't think

23    there's any dispute about this, the instructions

24    Mr. Cooper was given was "disclose, cooperate, with

25    respect to coffee and cooperate with their

1   investigation," Mr. Joyce being a public official.

2        Now, an attorney who's under -- my analysis goes

3   like this.  An attorney who's under such instructions

4   cannot claim the attorney-client privilege as to any

5   factual matter that the client has instructed him to

6   disclose.  So one could conceive of calling Mr. Cooper

7   before the grand jury and saying to him, "What did

8   Mr. Joyce tell you to tell the Ethics Commission?" and

9   also not within the attorney-client privilege, the

10  factual notes -- Mr. Cooper is meeting with his clients,

11  he necessarily wants to be accurate, Joyce is telling

12  him whatever happened that is to be disclosed, and he

13  makes notes of that.  The government doesn't have that.

14  For starters I don't see how that falls within the

15  attorney-client privilege.

16       Now, if Mr. Cooper gives legal advice back then

17  about what he should do or what he should say, that's

18  privileged.  If, um, Joyce is asking legal advice, "What

19  am I exposed to?  What's my downside risk?  Will the

20  Feds be interested in this?"  We've got experienced

21  lawyers in the room, they can do much better than I, all

22  privileged, that's seeking legal advice.  But I -- but

23  it's hard for me to see that the subpoena in its

24  entirety ought to be quashed.  I think that gets -- I'm

25  still going to stick with this alleged crime fraud

1   exception.  I think that gets the government all it's

2   entitled to.

3        What more do you think you're entitled to if I

4   deny the motion to quash the subpoena, and up to the

5   time the federal search warrant comes out, and limit it

6   of course to factual matters which the client authorized

7   to be disclosed, either directly or by reasonable

8   inference, "Tell the Globe this?  Get them off my back"?

9   Now -- then you get the notes.  What you talked about

10  directly, he gives him a -- you say now you can prove

11  some backdated check or whatever, well, fine, you've got

12  it, and if it was in Mr. Cooper's files, you're entitled

13  to know that it was in Mr. Cooper's files and that he

14  gave it to the attorney, I suppose.

15       Now, one could infer some nefarious conduct.  I

16  don't, on this record it would be completely

17  unwarranted.

18       What more do you think you can get?

19            MR. BLOOMER:  Your Honor, I think that's a

20  fair approach to it, that it be -- I guess, you know, in

21  my mind they've offered to stipulate to this saying that

22  -- they've offered to stipulate to the fact that Joyce

23  authorized the disclosures that were made to the Ethics

24  Commission, and where I get hung up here is, well, um,

25  was there anything else -- and I think under the crime

1   fraud exception we would be entitled to this, was there

2   anything else that Joyce said about the receipt of the

3   free coffee that was not contained in those disclosures

4   to the Ethics Commission?

5          THE COURT:  You're putting -- at least as I

6   analyze it, you're putting the cart before the horse.

7   Look, if Joyce said, "Here's a" -- and he didn't, and

8   this would be highly unlikely, but if the client said

9   this, "Here's a backdated receipt which covers up and

10  makes it look like I did this for legal services, give

11  this to them," I mean if he said that, um, I mean at

12  that stage Mr. Cooper becomes a co-conspirator, I don't

13  need any -- of course the crime fraud exception applies

14  because he's then a co-conspirator in a conspiracy to

15  obstruct justice and there's all sorts of ethical

16  violations.  I -- on this record I have no basis for

17  drawing such an inference, nor do you.

18          MR. BLOOMER:  No.  No.  No.

19          THE COURT:  I understand what you've

20  suggested, what you say is he's the unknowing -- and I'm

21  using your characterizations, "He's the unknowing doof

22  of this nefarious conduct."

23          MR. COOPER:  My wife has used that word.

24          (Laughter.)

25          THE COURT:  Yeah, so has mine, in a different

1   context.

2        But you see if there are factual notes --

3   attorneys keep notes.  They keep records.  This is not

4   an atypical situation.

5        The *XYZ* case, which is in your briefs, you all

6   know that's my case, I didn't get that exactly right.

7   Hopefully I've learned from it.  So -- but it's not an

8   infrequent situation that attorneys interact with their

9   clients where the clients desire a public

10  attorney-vetted response, sort of a PR response.

11  There's nothing wrong with that.  But where the client

12  authorizes third-party knowledge, all the factual part

13  of that is outside the privilege.

14       And I'm pleased Mr. Cooper is present because I'm

15  not contemplating quashing the subpoena as a whole and

16  I'm trying to make myself clear.  But it's only the

17  factual business, unless of course you pierce the

18  attorney-client privilege by the crime fraud exception.

19  I don't hear it and I -- let's not waste time, I reject

20  it.

21       So now let's go, Mr. Murphy, I anticipate really

22  an order which says the motion to quash is allowed in

23  part and denied in part, so if they want to call him

24  before a grand jury -- God willing, I'm not going

25  anywhere, um, that I think because he had this

1   public-persona part, um, he may be required to appear

2   before the grand jury, he may if you're -- without

3   showing them, he may be required to go over his files

4   and find the factual but not disclosed data which was to

5   -- if it made clear that that's what Joyce wanted

6   disclosed and that must be disclosed to the grand jury,

7   confirmatively helping the government, if that helps

8   them, helping the government, and if we get to a

9   question-by-question issue, Mr. Cooper is himself a

10   skilled attorney, um, and I imagine I would be around to

11   settle it on a transcript.  That's how I would propose

12   to proceed.

13        Doesn't that fully vindicate Mr. Cooper's and

14   Mr. Joyce's rights?

15        MR. MARTIN MURPHY:  Your Honor, if I may be

16   heard briefly, your Honor?  I appreciate the Court's

17   effort to narrow this, but I think we'd like to make

18   three points in response to this.

19        The first is that respectfully I disagree with the

20   Court's analysis that the facts, um, that the client

21   provides to the lawyer do not remain privileged even if

22   the facts that the client has provided are intended to

23   be disclosed.

24        So, for example, if I were a plaintiff and a

25   personal injury lawyer and a client came to me and said

1    "I was standing in the crosswalk, I had the walk signal

2    and I was struck by a car," I could file a civil

3    complaint that said "The client was standing in the

4    crosswalk, proceeded when there was a walk signal, but

5    was nevertheless struck by the defendant's car."  I

6    don't think that any of us would likely say that my

7    interview with the client where I reported what he said

8    to me was not subject to the attorney-client privilege

9    because I chose to disclose it in a civil complaint.

10   That's what a client hired me to do.

11        And under the *Upjohn* case I think the Supreme

12   Court has made it clear that facts provided from clients

13   to lawyers for the purpose of, um, either providing

14   legal advice or taking legal action --

15             THE COURT:  Well, what's different with the

16   *Upjohn* case is that the *Upjohn* case requires -- as part

17   of the attorney-client privilege, is that the client

18   make clear -- it was in the corporate context there, but

19   made clear to the corporate agent that the client

20   desired it to be kept confidential.  Not so here.

21   Here's the reverse, the client desires it -- your

22   example.

23        I've never seen your example litigated.  I'd be

24   interested to see it.  I don't see it in these papers.

25   I -- I disagree with your first point.  If you have in

1   your yellow pad the client factually saying that, I

2   think, for instance, one could conceive as an

3   evidentiary matter, although I've never seen it, that

4   you could -- and they in fact would say, "Well, you

5   can't -- that's using the privilege as a sword and a

6   shield," but you would say, "Oh, it's a prior" -- well,

7   against some later charge of recent fabrication you

8   could say, "Oh, no, he told me that in my first

9   interview, look here."

10          Um, what's the second point?

11          MR. MARTIN MURPHY:  The second point, your

12   Honor, is that, as I think the Court and Mr. Bloomer has

13   said, we have offered -- Mr. Joyce has offered to

14   stipulate that each of the statements that was made to

15   the Ethics Commission was specifically authorized by

16   Mr. Joyce.  The consequence of permitting Mr. Cooper to

17   be called as a witness in the grand jury would -- it

18   would be highly likely that he would be disqualified

19   from representing Mr. Joyce because he would have served

20   as a witness against him.  In your example about the

21   auto accident, the lawyer could only turn over his notes

22   if he agreed no longer to serve as Mr. Joyce's counsel.

23   Here we think that there are two related concerns.

24          One is that, under the *DeOzzy* case and under the

25   *Stein* case, the *KPMG* case from the Second Circuit, that

1    an order like the kind that the Court is considering

2    would, um, interfere with Mr. Joyce's Sixth Amendment

3    rights and would, under Rule 17, be oppressive in the

4    kind of way that the Court's balancing approach would --

5              THE COURT:  That gives me pause.  Let me come

6    back to you on this.  I see -- suppose I were to skin it

7    this way.  We don't have Mr. Cooper appear, precisely

8    because of the awkwardness of that, but we tell him --

9    first of all to my allowing and denying the subpoena,

10   "Go over your file and see if you have," um, your

11   example, "I was standing on the curb, I had the walk

12   sign, I was in the crosswalk and I was struck," factual

13   statements like that, and if he does, they're to be

14   disclosed, in addition to the stipulation.

15             MR. MARTIN MURPHY:  That would certainly be

16   better than having him testify and I think we'd like to,

17   you know, probably caucus and think about that.

18             THE COURT:  All right.  Very well.

19             MR. MARTIN MURPHY:  The third point is that,

20   um, with respect to the work product analysis, I take

21   the Court's point, but I think there is one difference

22   between this circumstance and if Senator Joyce had come

23   to me or Senator Joyce had come to Max Stern, he would

24   have been looking for precisely the kind of advice and

25   services that you describe, the difference here is that

1    Mr. Cooper, as the Court may know him, is, as is in his

2    affidavit, he is a plaintiff's defamation lawyer in

3    addition to a Criminal Defense Lawyer.  The Court may

4    recall that he represented Judge Murphy -- and no

5    relation to any of other Murphys who are here today, as

6    far as I know anyway, certainly no relation to me, in

7    Judge Murphy's case against the Herald.  So when Senator

8    Joyce came to him he was and Mr. Cooper was anticipating

9    potential litigation against news media based on reports

10   that had been made about Joyce's conduct.

11        So we would say that there was not just the

12   enforcement action that the Court has already described,

13   which we would -- I would say for the record I think

14   extends to the Ethics Commission proceedings, but also

15   would apply to the possibility that Senator Joyce might

16   bring legal action against the Globe or other media

17   outlets, as Mr. Cooper has done in the past, or at the

18   very least, for example, as I know Mr. Cooper has done,

19   because I've represented some media outlets that he's

20   sent them to, um, sent a demand letter.  So when people

21   go to Mr. Cooper --

22             THE COURT:  No, I get your point.

23             MR. MARTIN MURPHY:  That's my third point.

24             THE COURT:  Yeah, I get your point and I'm

25   sensitive to it, though I don't see how it makes any

1   practical difference to what I contemplate because I'm

2   thinking only of factual material in Mr. Cooper's notes

3   up to the point of the federal subpoena.

4       How does the government, how does that set with

5   the government?

6           MR. BLOOMER:  Um, that's fine, Judge, I think

7   we can live with that.

8           THE COURT:  All right.

9       So for starters here's how's we're -- here's the

10  order.

11      The motion to quash the subpoena is allowed in

12  part and denied in part.  Mr. Cooper need not appear

13  before the grand jury.  Mr. Cooper, with the advice of

14  his present legal team, is -- and he's entitled to

15  confer with his client, Mr. Joyce, um, is ordered by the

16  Court to look over his files and to cull out factual

17  material disclosed to him by Mr. Joyce and authorized by

18  Mr. Joyce to be disclosed to third parties.  I think

19  that's clear enough.

20      Now let's get Mr. Joyce's counsel.  You're okay

21  with that?

22          MR. BRIAN MURPHY:  Um, I think so, your Honor.

23  I mean Mr. Joyce's main concern was the one that

24  Mr. Murphy just mentioned, that he would be deprived of

25  counsel.

1          THE COURT:  I can't see how this would deprive

2     him of counsel nor none of that is the Court's

3     intention, but you are prepared, it's been represented,

4     to make the stipulation that each of those statements

5     made to the state Ethics Commission was in fact

6     authorized by Mr. Joyce to be made to the Ethics

7     Commission?

8          MR. BRIAN MURPHY:  Yes, he's prepared to do

9     that.

10          THE COURT:  So it's on that understanding.

11    Thank you very much.

12          MR. COOPER:  Thank you, Judge.

13          MR. BLOOMER:  I just want to clarify a little

14    bit, your Honor.

15          THE COURT:  Yes.

16          MR. BLOOMER:  So he's ordered to review his

17    notes and he's producing the backing materials in his

18    notes to the government.

19          You're not requiring him to testify before the

20    grand jury?

21          THE COURT:  Correct.

22          MR. BLOOMER:  I would object to that.  I do

23    think he's a witness, I think he's a fact witness, and

24    if not I would ask the Court to at least entertain, once

25    we get this production, um, the government should be

1   permitted an opportunity to review it and if we think

2   that Mr. Cooper should testify before the grand jury, I

3   would like an opportunity to approach the Court.

4          THE COURT:  You have that opportunity.

5   Nothing's over till its over.  But I will tell you that

6   this business of subpoenaing lawyers, this Court at

7   least is very skeptical because of the Sixth Amendment

8   concerns here.  You really do put the lawyer in a

9   terrible ethical dilemma if you subpoena the lawyer for

10  a target before the grand jury.

11         MR. BLOOMER:  I understand that, Judge, and

12  it's not something that we do lightly, it goes through

13  Main Justice, it goes through all levels of approval, it

14  was our opinion that there was a sufficient showing here

15  that Mr. Joyce used Mr. Cooper to --

16         THE COURT:  I'm not talking in any way

17  critically, that's why we have a third branch of

18  government, and that's my view.

19         MR. BLOOMER:  Thank you, your Honor.

20         MR. STERN:  Will there be a written order?

21         THE COURT:  What they'll be is court notes.

22  The transcript is sealed.  You are entitled to get the

23  transcript.  Mr. Romanow will treat it as a sealed

24  transcript.

25         Actually, Mr. Romero, my Clerk, who's present here

1  has done a very thorough analysis of this, but I don't

2  really see a reason to write it up unless he comes back

3  and I waffle and I get more interested in this as some

4  groundbreaking case.  Aided by the law clerk, I've been

5  able to resolve the matter based on my current

6  understanding of the attorney-client privilege.  When

7  that's all I need do, I don't usually write.

8            MR. STERN:  I'm not asking you to write, your

9  Honor.

10           THE COURT:  Well, of course, you're all

11  treating it as a sealed transcript.  Yes.  Thank you.

12           (Ends, 3:20 p.m.)

13

14           C E R T I F I C A T E

15

16      I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

17  do hereby certify that the foregoing record is a true

18  and accurate transcription of my stenographic notes

19  before Judge William G. Young, on Thursday, March 30,

20  2017, to the best of my skill and ability.

21

22

23  /s/ Richard H. Romanow 04-18-17

    _____
24  RICHARD H. ROMANOW    Date

25