UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

v.

BRIAN AUGUSTINE JOYCE,

Defendant.

Crim. No. 17-10378-NMG

**BRIEF OF *AMICI CURIAE* THE MASSACHUSETTS BAR ASSOCIATION, THE MASSACHUSETTS ASSOCIATION OF CRIMINAL DEFENSE LAWYERS, THE ACLU OF MASSACHUSETTS, INC., AND 71 INDIVIDUAL MASSACHUSETTS ATTORNEYS IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR DISQUALIFICATION OF COUNSEL**

Martin W. Healy (BBO No. 553080)
Chief Legal Counsel
MASSACHUSETTS BAR ASSOCIATION
20 West Street
Boston, Massachusetts 02111-1204
Tel.: +1 617 338 0500

Chauncey B. Wood (BBO No. 600354)
MASSACHUSETTS ASSOCIATION OF
CRIMINAL DEFENSE LAWYERS
50 Congress Street, Suite 600
Boston, Massachusetts 02109
Tel.: +1 617 776 1851
cwood@woodnathanson.com

Matthew R. Segal (BBO No. 654489)
ACLU FOUNDATION OF MASSACHUSETTS,
INC.
211 Congress Street
Boston, Massachusetts 02110
Tel.: +1 617 482 3170

John J. Falvey, Jr. (BBO No. 542674)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.: +1 617 570 1000
Fax.: +1 617 523 1231
jfalvey@goodwinlaw.com

*Counsel for amici curiae* the Massachusetts Bar
Association, the Massachusetts Association of
Criminal Defense Lawyers, and the ACLU of
Massachusetts, Inc.

## TABLE OF CONTENTS

STATEMENT OF INTEREST OF AMICI CURIAE ..................................................................1

INTRODUCTION .....................................................................................................................4

BACKGROUND .......................................................................................................................5

ARGUMENT .............................................................................................................................7

     A.    DISQUALIFICATION OF DEFENDANT'S COUNSEL OF CHOICE
          ON THIS RECORD WOULD VIOLATE HIS SIXTH AMENDMENT
          RIGHTS AND CREATE TROUBLING PRECEDENT FOR FUTURE
          CASES. ......................................................................................................................7

     B.    AN ORDER DISQUALIFYING COUNSEL WOULD APPLY TO A
          WIDE RANGE OF PRE-TRIAL ADVOCACY FOR POTENTIAL
          CRIMINAL DEFENDANTS..................................................................................12

     C.    THE REQUESTED DISQUALIFICATION WOULD PUT ATTORNEYS
          IN AN ETHICALLY UNTENABLE SITUATION AND CONSTRAIN
          EFFECTIVE PRE-CHARGE ADVOCACY........................................................13

CONCLUSION........................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Communications Ass'n v. Douds*,
　339 U.S. 382 (1950) ............................................................................................................15

*Clark v. United States*,
　289 U.S. 1 (1933) ................................................................................................................9

*In re Grand Jury Investigation*,
　No. 03-123-LDD, 2006 WL 2385518 (E.D. Pa. May 16, 2006) ..............................8

*In re Grand Jury Proceedings*,
　417 F.3d 18 (1st Cir. 2005) ................................................................................................9

*In re Grand Jury Subpoena*,
　273 F. Supp. 3d 296 (D. Mass. 2017) ...........................................................................5-6

*In re Grand Jury Subpoena for Reyes-Requena*,
　913 F.2d 1118 (5th Cir. 1990) .......................................................................................10

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*,
　385 F.3d 72 (1st Cir. 2004) ......................................................................................... 12-13

*SEC v. Forman*,
　No. 07-11151-RWZ, 2010 WL 2367372 (D. Mass. Jun. 9, 2010) .........................12

*United States v. Coker*,
　298 F. Supp. 2d 184 (D. Mass. 2003) ...........................................................................13

*United States v. Curcio*,
　694 F.2d 14 (2d Cir. 1982) ...............................................................................................8

*United States v. DeNunzio*,
　1:14-cr-10284-NMG (Jul. 6, 2016) ...............................................................................15

*United States v. DiMasi*,
　810 F. Supp. 2d 347 (D. Mass. 2011) ...........................................................................15

*United States v. Diozzi*,
　807 F.2d 10 (1st Cir. 1986) ..................................................................................... *passim*

*United States v. Facteau*,
　No. 1:15-cr-10076-ADB (Jul. 20, 2016) .......................................................................15

*United States v. Gorski*,
   807 F.3d 451 (1st Cir. 2015) ........................................................................9

*United States v. Hallock*,
   941 F.2d 36 (1st Cir. 1991) ..........................................................................8

*United States v. Laura*,
   607 F.2d 52 (3d Cir. 1979)..................................................................... 10-11

*United States v. Reichel*,
   1:15-cr-10324-DPW (Jun. 17, 2016) ..........................................................15

*United States v. Turner*,
   594 F.3d 946 (7th Cir. 2010) .......................................................................8

*United States v. Urbana*,
   770 F. Supp. 1552 (S.D. Fla. 1991) ...........................................................11

*United States v. Wheat*,
   486 U.S. 153 (1988)..............................................................................4, 10

*United States v. Wilson*,
   2011 WL 740200 (E.D. Mich. Feb. 24, 2011) ...........................................10

*United States v. Woodward*,
   149 F.3d 46 (1st Cir. 1998) ........................................................................15

**Regulations and Rules**

17 C.F.R. § 202.5(c) ...........................................................................................12

Fed. R. Evid. 403 ................................................................................................16

Mass. Rule of Prof'l Conduct 1.3 .......................................................................14

Mass. Rule of Prof'l Conduct 3.6(c) ...................................................................16

Mass. Rule of Prof'l Conduct pmbl ¶ 2 ..............................................................14

**Other Authorities**

Lowenthal, *Successive Representation by Criminal Lawyers*, 93 Yale L.J. 1, 55
   (1983)..........................................................................................................10

Margolin & Coliver, *Pretrial Disqualification of Criminal Defense Counsel*, 20
   Am. Crim. L. Rev. 227, 229 (1982)............................................................10

## STATEMENT OF INTEREST OF AMICI CURIAE

*Amicus curiae* the Massachusetts Bar Association ("MBA"), founded in 1910, is a non-profit organization that serves the legal profession and the public by promoting the administration of justice, legal education, professional excellence and respect for the law.  The MBA is the largest bar association in Massachusetts, with approximately 12,000 members state-wide.  It is comprised of a House of Delegates that consists of a president, president-elect, vice-president, treasurer, secretary, the two most immediate, living past presidents, 18 regional delegates, seven at-large delegates, chairs of the twenty one section councils and others.  The MBA is governed by a set of bylaws, which were most recently approved by the members in March of 2014.  The mission of the MBA is to provide professional support and education to members, and advocacy on behalf of lawyers, legal institutions and the public.  As part of its advocacy goal, the MBA has formed an Amicus Curiae Committee ("ACC") to evaluate certain litigation in which the MBA may be interested in participating.  Upon the receipt of a proposal from the ACC, the House of Delegates votes on whether the MBA should participate in the cause through the filing of an amicus curiae brief.  The ACC has determined that the issues raised in this case so affect the public policy of the Commonwealth of Massachusetts that a brief amicus is warranted.  The House of Delegates has approved its filing.

*Amicus curiae* the Massachusetts Association of Criminal Defense Lawyers ("MACDL"), an affiliate of the National Association of Criminal Defense Lawyers, is the preeminent association of criminal defense lawyers in Massachusetts.  Its mission is to provide support for criminal defense lawyers in their professional practices, including submitting *amicus* briefs and providing other services that will improve the quality of representation of the accused; to protect the individual rights of the citizens of the Commonwealth as guaranteed by the Declaration of

Rights of the Massachusetts Constitution and the United States Constitution, including, especially, the right to counsel; to maintain the integrity and independence of criminal defense lawyers; to preserve the adversary system of justice; and to coordinate efforts with national and local bar associations that are concerned with criminal justice.

*Amicus curiae* the American Civil Liberties Union of Massachusetts, Inc. ("ACLUM"), an affiliate of the national American Civil Liberties Union, is a statewide nonprofit membership organization dedicated to the principle of liberty and equality embodied in the constitutions and laws of the Commonwealth and the United States.

Also joining this brief as *amici curiae* are 71 experienced members of the Massachusetts Bar, including attorneys who represent individuals and entities who may be targets or subjects of federal criminal investigations.  The attorneys, who sign this brief individually below, are:

| | | |
|---|---|---|
| John Amabile | Emily F. Hodge | Emma Quinn-Judge |
| Laura B. Angelini | Thomas M. Hoopes | James C. Rehnquist |
| Michael P. Angelini | David Hoose | John Reinstein |
| David Apfel | Michael. S. Hussey | Dean Richlin |
| Peter E. Ball | Michael B. Keating | Ian D. Roffman |
| Robert Blaisdell | Paul V. Kelly | Edward P. Ryan, Jr. |
| Douglas S. Brooks | Jonathan L. Kotlier | Christine G. Savage |
| Thomas J. Butters | William F. Lee | Joseph F. Savage, Jr. |
| R.J. Cinquegrana | Joshua S. Levy | Kristen Schuler Scammon |
| Edward V. Colbert III | Frank A. Libby, Jr. | Emily R. Schulman |
| John J. Commisso | Diana K. Lloyd | Monica R. Shah |
| Michael J. Connolly | Elizabeth A. Lunt | Paul W. Shaw |
| Meghan M. Cosgrove | Scott P. Lopez | Bruce A. Singal |
| John H. Cunha, Jr. | Daniel N. Marx | William F. Sinnott |
| David Duncan | Elizabeth J. McEvoy | Carol Starkey |
| Laura E. Dwyer | Tracy A. Miner | Callan G. Stein |
| Thomas E. Dwyer, Jr. | Anthony Mirenda | Donald K. Stern |
| L. Ettenberg | Brien T. O'Connor | Rachel Stroup |
| William W. Fick | Ruth O'Meara-Costello | Melissa B. Tearney |
| Thomas C. Frongillo | Robert L. Peabody | Nicholas C. Theodorou |
| Lenore Glaser | Mark W. Pearlstein | Michael J. Tuteur |
| James J. Gribouski | Michelle R. Peirce | Sarah R. Wunsch |
| Scott Harshbarger | Thomas E. Peisch | Norman S. Zalkind |
| Geraldine S. Hines | Damien C. Powell | |

*Amici* seek to provide information to this Court regarding the far-reaching negative implications of a ruling for the government on the motion before the Court.  In particular, *amici* are concerned that the order the government seeks would impermissibly infringe on criminal defendants' Sixth Amendment right to be represented by counsel of their choice, and would also impair the effective legal defense of respondents in a broad range of investigative matters and disputes in circumstances where there is reason to believe federal criminal charges may follow.

A motion requesting leave to file was submitted in tandem with this brief.  No party's counsel authored this *amici curiae* brief in whole or in part.  No party or party's counsel, and no person other than *amici*, their members, or their counsel, contributed money intended to fund the preparing or submitting of this brief.

## INTRODUCTION

The government seeks an order disqualifying Howard M. Cooper, Esq., of Todd & Weld LLP as defense counsel for defendant Brian Joyce. The government states that it intends to call Cooper as a trial witness to testify to his client's having provided false information contained in Cooper's pre-charge advocacy on Joyce's behalf, and thus Cooper must be disqualified. It maintains that position even though Joyce has offered to stipulate that *he* provided the information at issue and reviewed and authorized Cooper's communications cited in the Indictment, and has offered to waive any advice-of-counsel defense. In effect, the government would have this Court disqualify a criminal defendant's counsel of choice to establish facts that are not even in dispute.

A decision for the government on the disqualification motion would have far-reaching and troubling Sixth Amendment implications. The government's motion is controlled by *United States v. Diozzi*, 807 F.2d 10 (1st Cir. 1986), which held that disqualifying counsel of choice "should be a measure of last resort." *Id.* at 12. In *Diozzi*, the First Circuit reversed the defendants' convictions where the trial court had disqualified counsel after the defendants had offered a stipulation that is substantially identical to the one offered here. Disqualifying Cooper would therefore directly contradict *Diozzi* and implicate the United States Supreme Court's concerns that needlessly disqualifying counsel could encourage the government "to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side." *United States v. Wheat*, 486 U.S. 153, 163 (1988).

Beyond its implications for the Sixth Amendment in this case, granting the present motion would threaten ethical and effective advocacy by counsel in numerous other cases. It would encourage the government to seek to disqualify counsel more frequently in any of the

array of circumstances in which defense counsel may advocate on a client's behalf and might present what the government may later claim to be inaccurate information. It would encourage more frequent disruption of the relationship of trust that defendants have developed with counsel during the investigation phase, and would add tremendously to the cost of defense in those cases. It also would unnecessarily constrain counsel's pre-charge advocacy, given the concern that pre-charge statements could later lead to a motion to disqualify. *Amici* respectfully submit that the disqualification motion should be denied.

## BACKGROUND

Senator Joyce engaged Cooper and his firm, Todd & Weld, in March 2015. In 2015 and 2016, Cooper represented Joyce in advocating before the Massachusetts State Ethics Commission and in communications with *The Boston Globe*. Cooper's advocacy concerned the Commission's inquiries as to whether Joyce had improperly (i) received free coffee from a legal client in return for favorable legislative acts; (ii) filed legislation that would have benefited a client without making required disclosures; (iii) appeared before the Division of Insurance for an insurance company client while concealing his financial interest; and (iv) used retirement money to purchase stock in that company. D.I. 51, Ex. A.

Cooper then represented Joyce in connection with the ensuing federal grand jury investigation beginning in February 2016. In late 2016, the grand jury issued a subpoena that called for Cooper to testify before the grand jury and to produce files relating to his representation of Joyce. In March 2017, Judge Young granted in substantial part Cooper's motion to quash the subpoena, denying it only as to certain factual communications that were non-privileged because Joyce had disclosed them to Cooper and given Cooper authority to disclose them to third parties. *In re Grand Jury Subpoena*, 273 F. Supp. 3d 296, 300 (D. Mass.

2017).  In his ruling, Judge Young expressed "grave concern" that the government may be using its subpoena power to "turn[] defense counsel into a witness," thereby "disqualif[ying] counsel from representing [his client] due to an artificially-created conflict of interest."  *Id.* at 306.  At the hearing on the motion to quash, the government stated that it had no basis to believe that Cooper knew that any statement he had submitted on Joyce's behalf was false.  March 30, 2017, Hearing Tr. at 5-6.  Pursuant to Judge Young's order, Cooper and his firm then produced certain redacted documents to the government.  The government did not move to compel Todd &Weld's further production of documents or otherwise claim during the grand jury investigation that the redacted documents failed to satisfy Judge Young's order.

In December 2017, the grand jury returned a 113-count indictment of Joyce, charging him with violation of the Racketeer Influenced and Corrupt Organizations Act, mail and wire fraud (under a theft of honest services theory), and extortion.  D.I. 3.  The indictment cites statements made by Todd & Weld in three submissions on Joyce's behalf as bases for racketeering acts and/or substantive counts:

- Todd & Weld's letter to *The Boston Globe* on April 3, 2015, referring to an invoice and a 2014 check for coffee that Joyce allegedly backdated (racketeering act 15A-6 in Count 1 and Count 77, mail fraud);

- Cooper's letter to the Ethics Commission on January 27, 2016, contending that Joyce did not believe legislation he had drafted could be seen as benefiting his insurance company client (racketeering act 13B-50 in Count 1, and Count 70, mail fraud); and

- Cooper's letter to the Ethics Commission on February 5, 2016, contending that Joyce received the coffee as compensation for legal services (racketeering act 15A-8 in Count 1, and Count 79, wire fraud).

D.I. 3, at 61, 67, 79-81.

Cooper and Todd & Weld remain Joyce's counsel of choice in his defense of the pending charges, which arise from the same conduct investigated by the Ethics Commission and reported

upon by *The Globe*. The government now moves to disqualify Cooper as defense counsel on the ground that it intends to call Cooper as a witness regarding the three charged communications and perhaps others made on Joyce's behalf. D.I. 51, at 12-21.

We are advised that Joyce, in opposing the motion, has informed the government that he will provide a stipulation confirming (i) that Joyce reviewed, approved, and authorized the submission of each of the three statements at issue; and (ii) that Joyce will waive any reliance on an advice of counsel defense at trial and participate in a colloquy before the Court to confirm that his waiver of any such reliance is knowing and voluntary, after being advised by separate counsel. The government nonetheless pursues the disqualification and discovery motion.

## ARGUMENT

A.    DISQUALIFICATION OF DEFENDANT'S COUNSEL OF CHOICE ON THIS RECORD WOULD VIOLATE HIS SIXTH AMENDMENT RIGHTS AND CREATE TROUBLING PRECEDENT FOR FUTURE CASES.

This Court should deny the government's motion to disqualify Cooper. The government's motion implicates one of the most important rights possessed by a criminal defendant – the choice of defense counsel – and it has shown no need for that right to be extinguished in this case.

The government's disqualification motion is squarely foreclosed by the First Circuit's decision in *Diozzi*, which set aside a jury verdict convicting two defendants of multiple counts of income tax evasion, because the pretrial disqualification of their defense attorneys had violated their Sixth Amendment right to counsel of choice. 807 F.2d at 11. The First Circuit recognized that the Sixth Amendment right to counsel of choice is "qualified," but warned that disqualification "should be a measure of last resort," and that therefore, "[i]n moving to disqualify [defendants'] chosen counsel, the government bears a heavy burden of establishing

that disqualification is justified." *Id.* at 12.[1]  Where, as here, the government's proffer of a defense attorney's testimony will force the attorney's removal, the government may call the witness (and disqualification may be appropriate) only if, without his or her testimony, "the government must settle for less than its best evidence." *Id*. at 13 (quotation marks omitted); *United States v. Hallock*, 941 F.2d 36, 44 (1st Cir. 1991).  Thus, in *Diozzi*, the First Circuit reversed the convictions because the defense had offered a stipulation that satisfied the government's need for evidence that the defendants had made and authorized the allegedly false submissions to the IRS, ruling that the disqualification of counsel in those circumstances was impermissible.  807 F.2d at 13-14.

The government's attempts to distinguish *Diozzi* are unpersuasive.  In particular, in arguing that the crime-fraud exception to attorney-client privilege applies in this case, the government ignores the crucial difference between a defendant's using a lawyer to commit a crime (a circumstance not present here) and a defendant's engaging a lawyer to present a spirited defense, as Joyce did in this case.  The former warrants the application of the crime-fraud exception, the latter does not.

In contrast to this case and *Diozzi*, where attorneys were enlisted to defend against government accusations of wrongdoing, the crime-fraud exception applies "where the client

---

[1]      *See also, e.g.*, *United States v. Turner*, 594 F.3d 946, 953 (7th Cir. 2010) (the "mere possibility" that the defendant's co-conspirator, represented by the same counsel as defendant, would decide to cooperate with the government against the defendant, did not "justify[] the disqualification of . . . counsel"); *United States v. Curcio*, 694 F.2d 14, 27 (2d Cir. 1982) ("[a] defendant's choice of counsel is not to be dealt with lightly or arbitrarily" and the choice "should not be interfered with in cases where potential conflicts of interest are highly speculative" (quotation marks omitted)); *In re Grand Jury Investigation*, No. 03-123-LDD, 2006 WL 2385518, at *3 (E.D. Pa. May 16, 2006) (stating that "the government bears a 'heavy burden' in proving [an actual conflict or serious potential for an actual conflict] due to the ramifications of finding a conflict of interest,"  including disqualification of counsel (citing *Diozzi*, 807 F.2d at 12)).

sought or employed legal representation in order to commit or facilitate a crime or fraud." *In re Grand Jury Proceedings*, 417 F.3d 18, 22 (1st Cir. 2005). This case is fundamentally different than *United States v. Gorski*, 807 F.3d 451 (1st Cir. 2015), in which the First Circuit held that the crime-fraud exception applied where there was "complete congruence" between the scope of the representation and the client's fraudulent purpose. *Id.* at 462. There, the court found that Gorski's company engaged the law firm with the intent of having the firm document a transaction that advanced the charged scheme of misrepresenting that Gorski's business was majority-owned by a service-disabled veteran. *Id.* at 461. Here, the government cites no evidence that Joyce's *purpose* in retaining Cooper was to enable him to carry out the charged offenses. Rather, all indications are that Joyce retained Cooper for the far more commonplace purpose of representing him in connection with past conduct – specifically, the ethical and/or legal issues that had been raised in the 2015 *Globe* articles. *See also Clark v. United States*, 289 U.S. 1, 15 (1933) (the crime-fraud exception applies when "[a] client . . . consults an attorney for advice that will serve him in the commission of a fraud").

The government also claims that "[n]o affidavit or stipulation" can reveal all of the "facts and circumstances" that contributed to Cooper's statements (Mot. 14), but that claim cannot distinguish *Diozzi* because it is true of every statement made by a lawyer on a client's behalf. Every factual assertion by a lawyer has a story behind it. What was sufficient in *Diozzi*, and what is sufficient here, is that the defendant has stipulated to his *responsibility* for the lawyer's representations. *See* 807 F.2d at 12-14.

Given the absence of any workable limiting principle, the government's disqualification motion effectively seeks to allow the government to remove defense attorneys almost at will whenever defense counsel has made a pre-charge, exculpatory statement on behalf of his or her

client that the government claims to be false.  In this way, a decision for the government here would fail to heed the Supreme Court's warning to courts in *Wheat*, 486 U.S. 153, to guard against the risk that the government might seek to disqualify criminal defense counsel for tactical reasons.  Noting that "the Government may seek to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side," the *Wheat* Court admonished trial courts to "take [this possibility] into consideration" in deciding whether to disqualify an allegedly conflicted counsel.  *Id.* at 163.  Other federal courts have expressed similar concerns that the government may seek disqualification for inappropriate tactical reasons.[2]

The defendant's right to choose his or her own counsel, while not absolute, is crucial to the ability to shape his or her own defense.  As the Third Circuit stated in *United States v. Laura*, 607 F.2d 52, 56 (3d Cir. 1979), "attorneys are not fungible":

> We would reject reality if we were to suggest that lawyers are a homogenous group.  Attorneys are not fungible, as are eggs, apples and oranges.  Attorneys may differ as to their trial strategy, their oratory style, or the importance they give to particular legal issues.  These differences, all within the range of effective and competent advocacy, may be important in the development of a defense.

*Id.* at 56.  "Given this reality, a defendant's decision to select a particular attorney becomes

---

[2]  *See, e.g.*, *In re Grand Jury Subpoena for Reyes-Requena*, 913 F.2d 1118, 1130 (5th Cir. 1990) (expressing sensitivity to "concerns about unscrupulous attempts by the government to overcome the presumption in favor of a defendant's counsel of choice recognized by the Supreme Court in *Wheat*" (brackets and quotation marks omitted)); *United States v. Wilson*, No. 10-20581, 2011 WL 740200, at *6 (E.D. Mich. Feb. 24, 2011) (acknowledging that "the Government may seek to 'manufacture' a conflict" (quoting *Wheat*)); *see also* Margolin & Coliver, *Pretrial Disqualification of Criminal Defense Counsel*, 20 Am. Crim. L. Rev. 227, 229 (1982) ("It is the authors' opinion, based on familiarity with more than a dozen cases in which such disqualification inquiries have been filed, that the government's primary motive in bringing such motions is to disqualify the most competent lawyers and firms, with little regard for their reputation for ethical practice."); Lowenthal, *Successive Representation by Criminal Lawyers*, 93 Yale L.J. 1, 55 (1983) ("There are reasons to believe that some motions to disqualify counsel in criminal cases are also filed for tactical advantage.").

critical to the type of defense he will make." *Id.*

Where, as here, a defendant has not only selected an attorney, but also worked extensively with him and his law firm, depriving him of his counsel of choice causes two significant harms that infringe on the client's Sixth Amendment rights. First, as the Third Circuit has acknowledged, the defendant is deprived of the relationship of "intimacy and confidentiality" he has developed with the attorney during the investigatory phase, qualities "which are important to an effective attorney-client relationship" and crucial to an effective defense. *Id.* at 57.

Second, on a practical level, a defendant whose counsel has been disqualified must incur the added cost of retaining and bringing a new attorney (and usually attorneys) up to speed, on top of the cost associated with the disqualification motion. Because disqualification of defense counsel "imposes additional financial burdens on an already depleted defendant," it should be a "'measure of last resort.'" *United States v. Urbana*, 770 F. Supp. 1552, 1556 (S.D. Fla. 1991) (quoting *Diozzi*, 807 F.2d at 12). This is an extremely important consideration for defendants given the high legal costs of defending a complex case such as this one even without such disruption.

The government cannot meet its heavy burden of establishing that it would be deprived of its "best evidence" in light of the proffered stipulation. Ultimately, the government appears to argue that it should be permitted to call Cooper as a witness and thereby disqualify him simply by alleging that he *might* have knowledge of circumstances surrounding the allegedly false statements made on Joyce's behalf. Mot. 14. A disqualification order based solely on such speculation would upend the stringent standards the First Circuit prescribed in *Diozzi* and create troubling precedent.

B.   AN ORDER DISQUALIFYING COUNSEL WOULD APPLY TO A WIDE RANGE OF PRE-TRIAL ADVOCACY FOR POTENTIAL CRIMINAL DEFENDANTS.

The government's disqualification argument threatens a wide variety of advocacy that counsel routinely undertake in defending matters that have both criminal and civil implications. In addition to the fact patterns of this case and *Diozzi* (involving a submission to the IRS arguing against prosecution), the following are examples of circumstances in which pre-charge advocacy could be used to seek to exclude counsel of choice:

(i)   Counsel regularly make written submissions to federal and state agencies arguing that their clients' conduct was compliant with applicable law or that particular sanctions are unwarranted – including to the Departments of Defense and Health and Human Services, the Food and Drug Administration, and Centers for Medicare and Medicaid Services, to name just a few that have oversight over areas that lead frequently to federal criminal charges. The opportunity of respondents in Securities and Exchange Commission ("SEC") investigations to make a so-called Wells submission is one example of such pre-charge submissions. *See SEC v. Forman*, No. 07-cv-11151-RWZ, 2010 WL 2367372, at *2 n.3 (D. Mass. Jun. 9, 2010) (a "Wells notice issue[s] at the SEC's discretion to inform an individual under investigation that the SEC is considering" an enforcement proceeding, and "[t]he individual may respond with a Wells submission raising arguments or presenting evidence" (citing 17 C.F.R. § 202.5(c)); SEC Enforcement Manual § 3.2.3.2 (Nov. 28, 2017) ("During an investigation, persons may produce to the staff, on a voluntary basis, substantive materials other than in response to Wells notices, including, for example, white papers, PowerPoint decks, legal memos, or letter briefs.").

(ii)   Criminal charges are often accompanied by parallel civil cases, administrative proceedings, or state criminal cases in which defense counsel may be called upon to make a range of submissions including factual advocacy. *See, e.g., Microfinancial, Inc. v. Premier*

*Holidays Int'l, Inc.*, 385 F.3d 72, 77-79 (1st Cir. 2004) (no abuse of discretion in denying the defendant's request for a stay of civil proceedings pending a grand jury investigation; a party has no right to a stay of civil proceedings "simply because a parallel criminal proceeding is in the works"); *see also, e.g.*, *United States v. Coker*, 298 F. Supp. 2d 184, 192 (D. Mass. 2003) (describing parallel state and federal criminal investigations).

(iii)     The government's reasoning in this case could be extended even to pre-charge advocacy with the United States Attorney's Office or other offices in the Department of Justice. Federal criminal targets frequently seek to persuade prosecutors not to charge by making written submissions that include advocacy concerning anticipated evidence, in a range of formats (letters,  memoranda, white papers, PowerPoints, etc.).

(iv)     The breadth of the government's argument is particularly striking as it relates to statements to the press; in matters of public interest, as in this case, attorneys are often in a position of responding on the client's behalf to pre-charge press coverage.

In any or all of those contexts, prosecutors could later contend that factual assertions are false and, as they now contend with respect to Joyce, that the defendant engaged counsel for the purpose of having him make the false representations in order to facilitate or conceal the crime. Thus, an aggressive prosecutor could cite the false statement as a reason to call defense counsel as a witness, and thus disqualify counsel in the criminal case.

C.     THE REQUESTED DISQUALIFICATION WOULD PUT ATTORNEYS IN AN ETHICALLY UNTENABLE SITUATION AND CONSTRAIN EFFECTIVE PRE-CHARGE ADVOCACY.

A decision for the government in this case would have harmful secondary effects over and above the direct effect of disqualification of counsel in this case and others.   These secondary effects provide further reason to deny the government's motion given the availability to the government of the proffered stipulation.

*First*, a decision for the government would have a chilling effect on attorney advocacy. Respondents in parallel civil or criminal proceedings or forums (including those listed above) may be deprived of zealous advocacy if counsel believe that vigorous advocacy in other forums may result in additional criminal charges against the client, the attorney being called as a witness, or the client being forced to hire new counsel after the case is indicted.

A disqualification order in these circumstances could place defense attorneys in the difficult position of determining whether to violate their ethical obligations under Rule 1.3 of the Massachusetts Rules of Professional Conduct to "represent a client zealously within the bounds of the law." Rule 1.3; *see also* Mass. Rules of Prof'l Conduct Preamble ¶ 2 ("As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system."). Moreover, a lawyer also acts as a "negotiator" who "seeks a result advantageous to the client" and an "evaluator" who "examine[s] a client's legal affairs and report[s] about them . . . to others." Mass. Rules of Prof'l Conduct Preamble ¶ 2. Seeking disqualification could limit counsel's zealous advocacy and negotiation on his or her client's behalf, given the risk of a disqualification motion in a future criminal case. Disqualification therefore should occur only when absolutely essential to the government's ability to present its best case.

It is especially important that counsel have latitude to argue zealously on the issue of a target's intent, a critical issue in most white-collar cases. Here, several of the charged statements that Cooper made on Joyce's behalf concern Joyce's intent: for example, Cooper's statements to the Ethics Commission that Joyce did not believe legislation he had drafted could be seen as benefiting his insurance company client (the implication being that Joyce did not intend to benefit that client), p. 6, *supra*; and that Joyce had "always *understood* that the services he provided exceeded the value of any coffee he received," Mot. 11 (emphasis added); *see also*

Mot. at 6 (referring to other statements made by Cooper on Joyce's behalf to the Ethics Commission regarding Joyce's "understanding" and "belief").

A defendant's intent inherently involves inferences from and interpretation of facts and legal argument. *See United States v. Woodward*, 149 F.3d 46, 56 (1st Cir. 1998) ("the specific intent to deceive may be proven (and usually is) by indirect and circumstantial evidence" (quotation marks omitted)); *United States v. DiMasi*, 810 F. Supp. 2d 347, 353 (D. Mass. 2011) ("Circumstantial evidence may be particularly important in determining a defendant's intent."); *see also Am. Communications Ass'n v. Douds*, 339 U.S. 382, 411 (1950) ("[W]hile objective facts may be proved directly, the state of a man's mind must be inferred from the things he says or does . . . . [C]ourts and juries every day pass upon knowledge, belief and intent – the state of men's minds – having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred." (quotation marks omitted)).  Clients should be free to have their counsel make those arguments zealously (so long as counsel is not making statements he or she knows to be false) without undue concern that the advocacy will force counsel off the case in the event of a criminal charge.[3]

*Second*, a disqualification order would put attorneys in an untenable situation in cases involving pre-charge publicity.  The Massachusetts Rules of Professional Conduct state that while a lawyer should generally avoid commenting publicly on her client's case, she "may make

---

[3]      Several recent acquittals in white-collar prosecutions in this district have been based on lack of criminal intent.  *See, e.g.*, D.I. 432, in *United States v. Facteau*, No. 1:15-cr-10076-ADB (Jul. 20, 2016) (finding that the defendants were not guilty on several counts because they had not acted "with the intent to defraud or mislead"); D.I. 247, in *United States v. Reichel*, 1:15-cr-10324-DPW (Jun. 17, 2016) (judgment of acquittal); D.I. 522, in *United States v. DeNunzio*, 1:14-cr-10284-NMG (Jul. 6, 2016) (judgment of acquittal).  Presumably, in those and other cases, intent was a key issue in targets' pre-charge advocacy with the government.  Targets' ability to benefit from effective pre-charge advocacy would be diminished – and the criminal justice system would be weakened for all parties – if their counsel felt they had to "pull punches" out of concern that any written statements could lead to a disqualification motion.

a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client."   Mass. Rule of Prof'l Conduct 3.6(c); *see also id.* Comment 7 ("When prejudicial statements have been publicly made by others, responsive statements may have the salutary effect of lessening any resulting adverse impact on the adjudicative proceeding.").   An order disqualifying Cooper could discourage reasonable lawyers from doing what they believe is *required* to protect their clients from the prejudicial effect of negative pre-trial publicity (consistent with the Local Rules of this Court), for fear that their statements to the press will be charged as crimes and will result in their disqualification.

*Third*, a disqualification order would set a precedent that would inevitably, and unnecessarily, prejudice defendants.   Calling a defendant's own former lawyer in the case against the defendant has to create a strong negative impression on a jury, regardless of the content of the lawyer's testimony.   In circumstances where there is a stipulation or affidavit available such as the one proffered here, the prejudice of calling the lawyer as a witness far outweighs any probative value of the lawyer's testimony.   *Cf.* Fed. R. Evid. 403.

## CONCLUSION

Given the government's failure to show that it would be deprived of its "best evidence" absent disqualification in light of the proffered stipulation, the disqualification order that it seeks would diminish defendants' Sixth Amendment rights to be represented by counsel of choice. It would also impair the effective legal defense of respondents in a broad range of investigative matters and disputes. For these reasons, this Court should deny the government's motion.

Martin W. Healy (BBO No. 553080)
Chief Legal Counsel
MASSACHUSETTS BAR ASSOCIATION
20 West Street
Boston, Massachusetts 02111-1204
Tel.: +1 617 338 0500

Chauncey B. Wood, Esq. (BBO No. 600354)
MASSACHUSETTS ASSOCIATION OF CRIMINAL
DEFENSE LAWYERS
50 Congress Street, Suite 600
Boston, Massachusetts 02109
Tel.: +1 617 776 1851
cwood@woodnathanson.com

Matthew R. Segal (BBO No. 654489)
ACLU FOUNDATION OF MASSACHUSETTS, INC.
211 Congress Street
Boston, Massachusetts 02110
Tel.: +1 617 482 3170

_____/s/ John Amabile_____
John Amabile (BBO No. 016940)
Amabile & Burkly, P.C.
380 Pleasant Street
Brockton, MA 02301
508 559 6966
jamabile@abpclaw.com

Respectfully submitted,

_____/s/ John J. Falvey, Jr._____
John J. Falvey, Jr. (BBO No. 542674)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.: +1 617 570 1000
Fax.: +1 617 523 1231
jfalvey@goodwinlaw.com

*Counsel for amici curiae* the Massachusetts Bar Association, the Massachusetts Association of Criminal Defense Lawyers, and the ACLU of Massachusetts, Inc.

_____/s/ Laura B. Angelini_____
Laura B. Angelini (BBO No. 658647)
HINCKLEY ALLEN & SNYDER LLP
28 State Street
Boston, MA 02109-1775
Tel: +1 617 345 9000
langelini@hinckleyallen.com

_/s/ Thomas J. Butters_
Thomas J. Butters, Esquire (BBO No. 068260)
Butters Brazilian LLP
699 Boylston Street, 12th Floor
Boston, Massachusetts 02116
617.367.2600
617.367.1363 *f*
butters@buttersbrazilian.com

_/s/ Michael J. Connolly_
Michael J. Connolly (BBO No. 638661)
Hinckley, Allen & Snyder, LLP
28 State Street
Boston, MA 02109
mconnolly@hinckleyallen.com

_/s/ Michael P. Angelini_
Michael P. Angelini (BBO No. 019340)
BOWDITCH & DEWEY, LLP
311 Main Street - P.O. Box 15156
Worcester, MA 01615-0156
Telephone:  508-926-3400
Facsimile:  508-798-3537
Email:  mangelini@bowditch.com

_/s/ David Apfel_
David Apfel (BBO No. 551139)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.: +1 617 570 1000
Fax.: +1 617 523 1231
dapfel@goodwinlaw.com

_/s/ James C. Rehnquist_
James C. Rehnquist (BBO No. 552602)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.: +1 617 570 1000
Fax.: +1 617 523 1231
jrehnquist@goodwinlaw.com

_/s/ Joseph F. Savage, Jr._
Joseph F. Savage, Jr. (BBO No. 443030)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Tel.: +1 617 570 1000
Fax.: +1 617 523 1231
jsavage@goodwinlaw.com

_/s/ Peter E. Ball_
Peter E. Ball (BBO No. 546031)
Fitch Law Partners LLP
One Beacon Street
Boston, MA 02108
Ph: (617) 542-5542
Fx: (617) 542-1542
E-mail: peb@fitchlp.com

_/s/ Douglas S. Brooks_
Douglas S. Brooks (BBO No. 636697)
LIBBYHOOPES, P.C.
399 Boylston Street
Boston, MA 02116
(617) 338-9300
dbrooks@libbyhoopes.com

_/s/ Thomas M. Hoopes_
Thomas M. Hoopes, Esq. (BBO No. 239340)
LIBBYHOOPES, P.C.
399 Boylston Street
Boston, MA 02116
Telephone: (617) 338-9300
thoopes@libbyhoopes.com

_/s/ Frank A. Libby, Jr._
Frank A. Libby, Jr. (BBO No. 299110)
LIBBYHOOPES, P.C.
399 Boylston Street
Boston, MA 02116
Telephone: (617) 338-9300
FALibby@libbyhoopes.com

*/s/ R.J. Cinquegrana*

R.J. Cinquegrana (BBO No. 084100)
rjcinquegrana@choate.com
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Tel.: (617) 248-4002
Fax: (617) 502-4002

*/s/ Diana K. Lloyd*

Diana K. Lloyd (BBO No. 560586)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
t 617-248-5163
f 617-502-5163
dlloyd@choate.com

*/s/ Melissa B. Tearney*

Melissa B. Tearney (BBO No. 558612)
CHOATE HALL & STEWART LLP
Two International Place
Boston, MA  02110
Tel.:  617-248-4068
Fax:  617-248-4000
mtearney@choate.com

*/s/ Scott Harshbarger*

Scott Harshbarger (BBO No. 224000)
Senior Counsel
Casner & Edwards, LLP
303 Congress Street
Boston, Massachusetts 02210
Main: 617-426-5900 x. 388
Fax: 617-426-8810
Email: harshbarger@casneredwards.com

*/s/ Emily F. Hodge*

Emily F. Hodge (BBO No. 666660)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
(617) 248-4075
ehodge@choate.com

*/s/ Christine G. Savage*

Christine G. Savage (BBO No. 629671)
CHOATE, HALL & STEWART LLP
2 International Place
Boston, MA 02110
(617)248-4084
csavage@choate.com

*/s/ Edward V. Colbert III*

Edward V. Colbert III (BBO No. 566187)
Casner & Edwards LLP
303 Congress Street
Boston, Massachusetts 02210
Colbert@casneredwards.com

*/s/ John J. Commisso*

John J. Commisso (BBO No. 647002)
Jackson Lewis P.C.
75 Park Plaza
Boston, MA 02116
(617) 367-0025
John.commisso@jacksonlewis.com

19

*/s/ Paul V. Kelly*
Paul V. Kelly (BBO No. 267010)
Attorney at Law
Jackson Lewis P.C.
75 Park Plaza, 4th Floor
Boston, MA 02116
Direct: (617) 305-1263
Main: (617) 367-0025
Paul.Kelly@jacksonlewis.com

*/s/ Robert L. Peabody*
Robert L. Peabody (BBO No. 551936)
Jackson Lewis P.C.
75 Park Plaza
Boston, MA 02116
617 305-1242
robert.peabody@jacksonlewis.com

*/s/ John H. Cunha, Jr.*
John H. Cunha, Jr. (BBO No. 108580)
CUNHA & HOLCOMB, P.C.
One State Street, Suite 500
Boston, MA 02109-3507
617-523-4300

*/s/ Thomas E. Dwyer, Jr.*
Thomas E. Dwyer, Jr. (BBO No. 139660)
Dwyer LLC
10 Derne Street
Boston, MA 02114
Tel: (617) 227-6000
Fax: (617) 723-6892

*/s/ L. Ettenberg*
L. Ettenberg, Esquire (BBO No. 156520)
GOULD & ETTENBERG, P.C.
370 Main Street
Worcester, MA 01608
Telephone:  (508) 752-6733

*/s/ Thomas C. Frongillo*
Thomas C. Frongillo (BBO No. 180690)
Fish & Richardson P.C.
One Marina Park Drive
Boston, MA 02210

*/s/ Lenore Glaser*
Lenore Glaser, Esq. (BBO No. 194220)
(Abogada Bilingue)
45 Bromfield Street, Suite 500
Boston, MA. 02108
Tel: 617 753 9988
Fax: 617 830 0167

*/s/ James J. Gribouski*
James J. Gribouski (BBO No. 211240)
Glickman, Sugarman, Kneeland & Gribouski
11 Harvard Street
P.O. Box 2917
Worcester, MA 01613-2917
508-756-6206
gribouski@gskandg.com

*/s/ Geraldine S. Hines*
Geraldine S. Hines (BBO No. 235320)
24 Kenilworth Street
Roxbury, MA 02119
(617) 359-3819
geraldinehines24k@gmail.com

*/s/ David Hoose*
David Hoose (BBO No. 239400)
Sasson, Turnbull, Ryan & Hoose
100 Main Street
Northampton, MA 01060
413.586.4800 x 107

*/s/ Michael S. Hussey*
Michael S. Hussey (BBO No. 547772)
Murphy & Rudolf, LLP
One Mercantile Street, Suite 740
Worcester, MA 01608
508-425-6330
hussey@murphyrudolf.com

*/s/ Anthony Mirenda*
Anthony Mirenda (BBO No. 550587)
Foley Hoag LLP
155 Seaport Blvd.
Boston MA 02210
Tel.: 1-617-832-1220
Email: amirenda@foleyhoag.com

*/s/ Nicholas C. Theodorou*
Nicholas C. Theodorou (BBO No. 495730)
Foley Hoag LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
Tel: 617-832-1000
Fax: 617-832-7000
ntheodorou@foleyhoag.com

*/s/ Ian D. Roffman*
Ian D. Roffman (BBO No. 637564)
Nutter McClennen & Fish LLP
155 Seaport Blvd
Boston, Massachusetts 02210
617-439-2000
iroffman@nutter.com

*/s/ Emily R. Schulman*
Emily R. Schulman (BBO No. 566374)
WilmerHale
60 State Street
Boston, MA 02109 USA
+1 617 526 6077 (t)
+1 617 526 5000 (f)
emily.schulman@wilmerhale.com

*/s/ Michael B. Keating*
Michael B. Keating, Esq. (BBO No. 263360)
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Blvd.
Boston, MA 02210-2600
mkeating@foleyhoag.com

*/s/ Dean Richlin*
Dean Richlin (BBO No. 419200)
Foley Hoag LLC
Seaport West
155 Seaport Boulevard
Boston, MA  02210
(617) 832-1140
drichlin@foley.hoag.com

*/s/ Jonathan L. Kotlier*
Jonathan L. Kotlier (BBO No. 545491)
Nutter McClennen & Fish LLP
155 Seaport Boulevard
Boston, MA 02210-2604
T 617.439.2683
F 617.310.9683
jkotlier@nutter.com

*/s/ William F. Lee*
William F. Lee (BBO No. 291960)
WilmerHale
60 State Street
Boston, MA 02109
+1 617 526 6556 (t)
+1 617 526 5000 (f)
william.lee@wilmerhale.com

*/s/ Joshua S. Levy*
Joshua S. Levy (BBO No. 563017)
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000
joshua.levy@ropesgray.com

*/s/ Brien T. O'Connor*
Brien T. O'Connor (BBO No. 546767)
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000
brien.o'connor@ropesgray.com

*/s/ Daniel N. Marx*
Daniel N. Marx (BBO No. 674523)
FICK & MARX LLP
100 Franklin Street, 7th Floor
Boston, MA 02110
(857) 321-8360
dmarx@fickmarx.com

*/s/ Tracy A. Miner*
Tracy A. Miner (BBO No. 547137)
Demeo LLP
200 State Street
Boston, MA 02109
Tel - (617) 263-2600
tminer@DemeoLLP.com

*/s/ Thomas E. Peisch*
Thomas E. Peisch (BBO No. 393260)
Conn Kavanaugh Rosenthal Peisch &
     Ford, LLP
One Federal Street, 15th Floor
Boston, MA 02110
Dir  617.348.8204
Tel  617.482.8200
Fax 617.482.6444
TPeisch@connkavanaugh.com

*/s/ John Reinstein*
John Reinstein (BBO No. 416120)
Law Office of John Reinstein
51 Abbottsford Road
Brookline, MA 02446
(617) 515-7986
jcreinstein@gmail.com

*/s/ Scott P. Lopez*
Scott P. Lopez (BBO No. 549556)
Lawson & Weitzen, LLP
88 Black Falcon Avenue, Suite 345
Boston, MA 02210
617-439-4990 (tel.)
splopez@lawson-weitzen.com

*/s/ William W. Fick*
William W. Fick (BBO No. 650562)
FICK & MARX LLP
100 Franklin Street, 7th Floor
Boston, MA 02110
(857) 321-8360
wfick@fickmarx.com

*/s/ Mark W. Pearlstein*
Mark W. Pearlstein (BBO No. 542064)
Partner
McDermott Will & Emery LLP
28 State Street
Boston, MA 02109-1775
Tel +1 617 535 4425
Fax +1 617 535 3800

*/s/ Carol Starkey*
Carol Starkey (BBO No. 554077)
Conn Kavanaugh Rosenthal Peisch &
     Ford, LLP
One Federal Street, 15th Floor
Boston, MA 02110
Dir  617.348.8204
Tel  617.482.8200
CStarkey@connkavanuagh.com

*/s/ Edward P. Ryan, Jr.*
Edward P. Ryan, Jr. (BBO No. 434960)
O'Connor and Ryan, P.C.
80 Erdman Way, Suite 309
Leominster, MA 01453
978-534-1301
edryan@oconnorandryan.com

/s/ Kristen Schuler Scammon
Kristen Schuler Scammon (BBO No. 634586)
TORRES, SCAMMON, HINCKS & DAY,
    LLP
35 India Street
Boston, MA 02110


/s/ Paul W. Shaw
Paul W. Shaw (BBO No. 455500)
VERRILL DANA LLP
One Boston Place, Suite 1600
Boston, MA 02108
(617) 309-2600
pshaw@verrilldana.com


/s/ Donald K. Stern
Donald K. Stern (BBO No. 479420)
YURKO, SALVESEN & REMZ, P.C.
One Washington Mall, 11th Floor
Boston, Massachusetts  02108
T: (617) 723 6900
F: (617) 723 6905


/s/ Michael J. Tuteur
Michael J. Tuteur (BBO No. 543780)
14 Horizons Rd.
Sharon, MA 02067


/s/ Sarah R. Wunsch
Sarah R. Wunsch (BBO No. 548767)
77 Brook Street
Brookline, MA 02445
617-872-7870
srwunsch@gmail.com


/s/ Norman S. Zalkind
Norman S. Zalkind (BBO No. 538880)
David Duncan (BBO No. 546121)
Rachel Stroup (BBO No. 667410)
Ruth O'Meara-Costello (BBO No. 667566)
Emma Quinn-Judge (BBO No. 664798)
Monica R. Shah (BBO No. 664745)
Zalkind Duncan & Bernstein LLP
65A Atlantic Avenue
Boston, MA 02110
Tel: (617) 742-6020
Fax: (617) 742-3269
nzalkind@zalkindlaw.com
dduncan@zalkindlaw.com
rstroup@zalkindlaw.com
rcostello@zalkindlaw.com
equinn-judge@zalkindlaw.com
mshah@zalkindlaw.com


/s/ Elizabeth A. Lunt
Elizabeth A. Lunt (BBO No. 307700)
Counsel
Zalkind Duncan & Bernstein LLP
65a Atlantic Avenue
Boston, MA 02110
617-742-6020


/s/ Bruce A. Singal
Bruce A. Singal (BBO No. 464420)
BARRETT & SINGAL, PC
One Beacon Street – Suite 1320
Boston, MA 02108
Telephone: (617) 720-5090
Email:  bsingal@barrettsingal.com

_/s/ Michelle R. Peirce_
Michelle R. Peirce (BBO No. 557316)
BARRETT & SINGAL, PC
One Beacon Street – Suite 1320
Boston, MA 02108
Telephone: (617) 720-5090
Email:  mpeirce@barrettsingal.com

_/s/ Callan G. Stein_
Callan G. Stein (BBO No. 670569)
BARRETT & SINGAL, PC
One Beacon Street – Suite 1320
Boston, MA 02108
Telephone: (617) 720-5090
Email:  cstein@barrettsingal.com

_/s/ William F. Sinnott_
William F. Sinnott (BBO No. 547423)
BARRETT & SINGAL, PC
One Beacon Street – Suite 1320
Boston, MA 02108
Telephone: (617) 720-5090
Email:  wsinnott@barrettsingal.com

_/s/ Meghan M. Cosgrove_
Meghan M. Cosgrove (BBO No. 664972)
BARRETT & SINGAL, PC
One Beacon Street – Suite 1320
Boston, MA 02108
Telephone: (617) 598-6700
Email:  mcosgrove@barrettsingal.com

_/s/ Lauren E. Dwyer_
Lauren E. Dwyer (BBO No. 657727)
BARRETT & SINGAL, PC
One Beacon Street – Suite 1320
Boston, MA 02108
Telephone: (617) 720-5090
Email:  ldwyer@barrettsingal.com

_/s/ Damien C. Powell_
Damien C. Powell (BBO No. 664200)
BARRETT & SINGAL, PC
One Beacon Street – Suite 1320
Boston, MA 02108
Telephone: (617) 720-5090
Email:  dpowell@barrettsingal.com

_/s/ Elizabeth J. McEvoy_
Elizabeth J. McEvoy (BBO No. 683191)
BARRETT & SINGAL, PC
One Beacon Street – Suite 1320
Boston, MA 02108
Telephone: (617) 720-5090
Email:  emcevoy@barrettsingal.com

_/s/ Robert Blaisdell_
Robert Blaisdell (BBO No. 568060)
BARRETT & SINGAL, PC
One Beacon Street – Suite 1320
Boston, MA 02108
Telephone: (617) 598-6700
Email:  rblaisdell@barrettsingal.com

Dated: April 2, 2018