FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS 2018 APR -2 PM 4: 45

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| v. | ) CRIM NO. |
| | ) 17-10378-NMG |
| BRIAN AUGUSTINE JOYCE, | ) |

**PROPOSED BRIEF OF *AMICUS CURIAE* THE BOSTON BAR ASSOCIATION**

**I.      STATEMENT OF INTEREST OF *AMICUS CURIAE***

*Amicus Curiae* the Boston Bar Association ("BBA") is a voluntary organization of over 12,000 lawyers, judges, and law students. The BBA was founded in 1761 by John Adams and other Boston lawyers and is the nation's oldest bar association. Its mission is to facilitate access to justice, advance the highest standards of excellence for the legal profession, and serve the community at large. From its early beginnings, the BBA has served as a resource for the judicial, legislative and executive branches of government.

The BBA has a strong interest in protecting the sanctity of the attorney-client relationship and in safeguarding the constitutional right of lawyers to advocate on behalf of their clients. It has appeared as an intervenor or as *amicus curiae* in several cases relating to these issues. *See, e.g., United States v. Klubock*, 639 F. Supp. 117 (D. Mass. 1986), *aff'd,* 832 F.2d 649 (1st Cir.), *aff'd on reh'g,* 832 F.2d 664 (1st Cir. 1987) (intervenor); *Stern v. U.S. Dist. Court for Dist. of Mass.*, 214 F.3d 4, 7 (1st Cir. 2000) (amicus); *United States v. Legal Servs. for New York City*, 249 F.3d 1077 (D.C. Cir. 2001) (amicus); *Suffolk Const. Co. v. Div. of Capital Asset Mgmt.*, 449 Mass. 444, 870 N.E.2d 33, 35 (2007) (amicus); *Am. Civil Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644 (6th Cir. 2007) (amicus); *Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc.*, 449 Mass. 609, 870 N.E.2d 1105 (2007); *The Real Estate Bar Ass'n For Mass., Inc. v. Nat'l Real Estate Info. Servs.*,

608 F.3d 110 (1st Cir. 2010) (amicus); *RFF Family P'ship, LP v. Burns & Levinson, LLP*, 465 Mass. 702, 991 N.E.2d 1066 (2013) (amicus).

Because the government's motion to disqualify raises important Sixth Amendment issues concerning a defendant's right to counsel, as well as important First Amendment issues regarding counsel's right to petition the government for relief on behalf of a client and to advocate for a client in the court of public opinion, the BBA respectfully seeks leave to be heard as *amicus curiae*.[1]

## II. ARGUMENT

The issue presented in this case is whether the government is entitled to the extraordinary remedy of disqualifying defense counsel in a criminal prosecution. The principal grounds asserted for disqualification are statements made by defense counsel to the Enforcement Division of the Massachusetts State Ethics Commission. The statements were authorized by and made on behalf of defense counsel's client, then the subject of an Ethics Commission investigation. The government contends that the statements were false, but acknowledges that it has no evidence defense counsel knew them to be false when made. *See* Government's Br. at 18 (whether defense counsel "knowingly assisted" the defendant is "unknown to the government"); *see also* March 30, 2018 Tr. at 5, 11.

---

[1] The BBA understands that both the defendant and *amici curiae* the Massachusetts Bar Association, *et al.*, will brief the important Sixth Amendment issues raised by the government's motion and the grave dangers that would be posed if the relief sought by the government was granted in this case. The BBA strongly supports the bedrock principles that the Sixth Amendment right to assistance of counsel encompasses a defendant's qualified right to be represented in a criminal prosecution by counsel of his or her own choice; that the government properly bears a heavy burden of establishing that disqualification is justified; and that disqualification of defense counsel always should be a measure of last resort. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006); *United States v. Diozzi*, 807 F.2d 10, 12 (1st Cir. 1986). It will not repeat here the Sixth Amendment arguments ably presented to the Court by others.

The BBA submits this amicus brief to address its concern that the relief sought by the government would infringe upon important First Amendment rights by unjustifiably restricting the right of counsel to petition the government and to speak publicly on behalf of their clients.

### A. Communications between a Defense Lawyer and the Government Serve Compelling Interests and are Protected by the First Amendment.

The government contends that defense counsel in a criminal prosecution may be disqualified and the attorney-client privilege lost if the lawyer makes allegedly false statements in a submission to a state agency, even in the absence of evidence that the lawyer knew the statements were false when made. The legal standard proposed by the government would violate well-established constitutional protections of the right to petition the government.

The First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." The right to petition the government is one of "the most precious of the liberties safeguarded by the Bill of Rights," *Mine Workers v. Illinois Bar Ass'n*, 389 U.S. 217, 222 (1967), and is implied by the "very idea of a government, republican in form." *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 524-25 (2002) (quoting *United States v. Cruikshank*, 92 U.S. 542, 552 (1876)). It is a right commonly (and often necessarily) exercised through counsel. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1051 (1991) (criminal defense bar "has the professional mission to challenge actions of the State").[2]

Defense counsel's presentation of his client's defense to the Ethics Commission was a form of petitioning activity protected by the First Amendment. Supreme Court precedent leaves no

---

[2] In the words of Andrew Hamilton, "it is a privilege, I will go farther, it is a right, which all free men claim, that they are entitled to complain when they are hurt [and to] publicly to remonstrate against the abuses of power in the strongest terms[.]" John Peter Zenger Trial, Trial Record, http://www.famous-trials.com/zenger/89-record (last visited March 31, 2018).

doubt that the Petition Clause embraces "communications addressed to the executive, the legislature, courts, and administrative agencies." *McDonald v. Smith*, 472 U.S. 479, 488 (1985). *See also Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011) (Petition Clause "protects the right of individuals to appeal to ... forums established by the government for resolution of legal disputes"); *California Motor Transport Co. v. Trucking Unlimited*, 404 US 508, 510 (1972) ("Certainly the right to petition extends to all departments of the Government."). Because the petitioning statements at issue in this case concern "matters of legal representation," they are accorded "the strongest protection our Constitution has to offer[.]" *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 634 (1995) (citing *Gentile*, 501 U.S. 1030; *In re Primus*, 436 U.S. 412 (1978)).

The First Amendment protects petitioning "whenever it is genuine, not simply when it triumphs." *BE&K Constr.*, 536 U.S. at 532; *see also The Real Estate Bar Ass'n For Mass., Inc. v. Nat'l Real Estate Info. Servs.*, 608 F.3d 110, 124-25 (1st Cir. 2010). For that reason, proof that a petition is based on false facts or otherwise lacks merit does not strip petitioning activity of constitutional protection. In order to forfeit constitutional protection, the petitioning activity "must be a sham *both* objectively and subjectively," *i.e.*, it must be "both objectively baseless and subjectively motivated by an unlawful purpose." *BE&K Constr.*, 536 U.S. at 526, 531 (emphasis in original).

As the *BE&K Constr.* Court explained, "while false statements may be unprotected for their own sake, '[t]he First Amendment requires that we protect some falsehood in order to protect *speech that matters*.'" *Id.* at 531 (emphasis in original) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341, 342 (1974) (noting the need to protect some falsehoods to ensure that "the freedoms of speech and press [receive] that 'breathing space' essential to their fruitful exercise") (citation omitted). The Court cited as an example of such "breathing space protection" the requirement in

other First Amendment contexts of clear and convincing proof that false statements are made with knowledge or reckless disregard of their falsity. *Id.* (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 285 (1964) (internal quotation marks omitted).

Applying similar reasoning, the Supreme Court has held that a rule requiring a speaker to "guarantee the truth of all his factual assertions" inescapably leads to a form of "self-censorship." *Sullivan*, 376 U.S. at 279.

> Under such a rule, would-be critics of official conduct may be deterred from voicing their criticism, even though it is believed to be true and even though it is in fact true, because of doubt whether it can be proved in court or fear of the expense of having to do so. They tend to make only statements which "steer far wider of the unlawful zone." [Citation omitted]. The rule thus dampens the vigor and limits the variety of public debate. It is inconsistent with the First and Fourteenth Amendments.

*Id. See also United States v. Alvarez*, 567 U.S. 709, 718 (2012) ("some false statements are inevitable if there is to be an open and vigorous expression of views in public and private conversation"). *See generally* Massachusetts Rules of Professional Conduct, Rule 4.1 ("a lawyer shall not *knowingly*: (a) make a false statement of material fact or law to a third person[.]") (emphasis added).

Accordingly, in order to provide the "breathing space" necessary to protect the right to freely petition the government, the First Amendment protects false statements of fact made in petitions to the government, provided that the statements are not made with knowledge of falsity. The government's disqualification theory, in contrast, would compel defense counsel in a criminal prosecution to "guarantee the truth of all of his [client's] factual assertions" on pain of disqualification and waiver of the attorney-client privilege. *Sullivan*, 376 U.S. at 279; *see also* Government's Br. at 18; March 30, 2018 Tr. at 5, 11. Under the legal standard proposed by the government, it would not be necessary to first prove that the statements at issue were in fact false

or that defense counsel knew them to be false. A lawyer need only repeat his client's version of the facts—or perhaps just his claim of innocence—for disqualification and waiver to follow.

Imposing such a restrictive standard on defense counsel would significantly interfere with the attorney-client relationship and inhibit the exercise of protected petitioning rights by limiting the breathing space essential to their fruitful exercise. *See BE&K Constr.*, 536 U.S. at 531; *Alvarez*, 567 U.S. at 718. It also would be contrary to sound public policy. The administration of justice is served when prosecutors make well-informed decisions. In criminal cases, the ability to communicate with the government about potential defenses ensures that, in appropriate cases, the government is better informed before making charging decisions. Similar considerations apply in civil matters involving a host of regulatory investigations. In all of these cases, the free flow of information between defense counsel and the government promotes the administration of justice. Imposing significant new barriers to pre-charging advocacy—such as the fear that an innocent misstatement will result in disqualification—would be both unconstitutional and contrary to the public interest.

The government's position effectively equates unproven allegations of false statements unknowingly made by defense counsel with ongoing efforts of the defendant to obstruct justice. The ramifications of this argument are far-reaching. For example, must a lawyer who offers a claim of actual innocence be disqualified if, as here, the government alleges that, unbeknownst to the lawyer, the client's denial of guilt is false? If a lawyer offers an alibi defense in support of a pre-trial motion to reduce bail, is it enough for a prosecutor to say, "We intend to prove that your client's alibi is false, which means that you are unknowingly assisting in the obstruction of justice and must therefore be disqualified; please turn over your files"? The right to petition the

government on a client's behalf would be significantly diminished and unconstitutionally compromised if lawyers were treated as the unconditional guarantors of their clients' statements.

It bears noting that protecting defense counsel's right to petition the government on his client's behalf would not provide the defendant with any additional defenses to the government's case. In this case, for example, the defendant has been charged with *knowingly* making false statements (the contents of which are not in dispute) to the Ethics Commission. Such conduct, if proven at trial, clearly falls outside the protection of the Petition Clause.

In sum, absent proof that a lawyer knowingly communicated false information on behalf of his client, the Petition Clause does not permit the government to disqualify defense counsel and obtain privileged communications simply because a lawyer repeated his client's defense to the government's charges against him.

**B.    A Lawyer's Statements to the Press on Behalf of a Client Are Protected by the First Amendment.**

The government claims that disqualification is independently warranted because defense counsel (through his law partner) made allegedly false statements to a newspaper reporter investigating the defendant's conduct. Here too, the government's disqualification theory ignores that the First Amendment protects a lawyer's right to defend his client from adverse publicity.

In *Gentile v. State Bar of Nevada*, the Supreme Court held that attorney speech about pending cases is protected by the First Amendment, and can be punished only upon a showing that the speech will cause a substantial likelihood of materially prejudicing an adjudicatory proceeding. 501 U.S. at 1051, 1075-76. Like the ethical rules regulating public comment by lawyers about pending cases, the Court's holding in *Gentile* was based on concerns about pretrial publicity prejudicing ongoing investigations or pending adjudicative proceedings. *See, e.g., id.* at 1070-75. *See also* Massachusetts Rules of Professional Conduct, Rule 3.6 ("A lawyer who is participating

or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.").

The statements to the press at issue in this case predated any known government investigation and were made long before the defendant was charged in this case. Even if the communication was considered the equivalent of a pre-charge public statement, however, it still would be entitled to First Amendment protection. As Justice Kennedy, joined by three other Justices, stated in *Gentile*:

> An attorney's duties do not begin inside the courtroom door. He or she cannot ignore the practical implications of a legal proceeding for the client. Just as an attorney may recommend a plea bargain or civil settlement to avoid the adverse consequences of a possible loss after trial, so too an attorney may take reasonable steps to defend a client's reputation and reduce the adverse consequences of indictment, especially in the face of a prosecution deemed unjust or commenced with improper motives. A defense attorney may pursue lawful strategies to obtain dismissal of an indictment or reduction of charges, including an attempt to demonstrate in the court of public opinion that the client does not deserve to be tried.

*Gentile*, 501 U.S. at 1043. *See generally* E. Chemerinsky, *Silence Is Not Golden: Protecting Lawyer Speech under the First Amendment*, 47 Emory L.J. 859 (1998). Absent evidence that defense counsel knew that information provided by the defendant was false—and the government cites no such evidence here—disqualifying defense counsel for publicly disclosing his client's position on a matter of public concern would contravene fundamental First Amendment principles.

### III.   CONCLUSION

For the foregoing reasons, the BBA respectfully submits that the disqualification order sought by the government should be denied on both Sixth Amendment and First Amendment grounds.

- 9 -

**THE BOSTON BAR ASSOCIATION**

By its attorneys,

/s/Jonathan M. Albano
Jonathan M. Albano
BBO #013850
jonathan.albano@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA  02110-1726
+1.617.341.7700

Dated:  April 2, 2018

### CERTIFICATE OF SERVICE

I, Jonathan M. Albano, hereby certify that, upon leave being granted this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants and that copies will be served by email on counsel of record on April 2, 2018.

/s/Jonathan M. Albano
Jonathan M. Albano