United States District Court
District of Massachusetts

```
_____
                              )
United States of America      )
                              )
        v.                    )      Criminal Action No.
                              )      17-10378-NMG
Brian Augustine Joyce,        )
                              )
        Defendant.            )
_____)
```

**MEMORANDUM & ORDER**

GORTON, J.

Defendant Brian Joyce ("defendant" or "Joyce"), a former Massachusetts State Senator, has been indicted by a grand jury on 113 counts including racketeering, honest services fraud, extortion under color of official right and conspiracy to defraud the IRS.

The government moves that the Court disqualify Attorney Howard M. Cooper ("Attorney Cooper" or "Cooper") from representing Joyce in this case. It contends that Cooper is a necessary percipient witness and that his representation of Joyce poses a conflict of interest. The government also proposes the issuance of a subpoena duces tecum to Attorney Cooper and requests that this Court perform an in camera, ex parte examination of Attorney Cooper's file to determine whether certain documents fall within the crime-fraud exception to attorney-client privilege.

## I.    Background

From 1998 to 2017, Mr. Joyce served as an elected State Senator in the Commonwealth of Massachusetts.  He represented the Norfolk, Bristol and Plymouth district and served for nine terms.  Joyce is also a member of the Massachusetts Bar and maintained a law practice while he held office which is permitted under Massachusetts law.

In December, 2017, a federal grand jury returned a 113-count indictment against Joyce, charging him with criminal conduct spanning from early 2010 through February, 2016.  The indictment alleges that, as a State Senator, Joyce attempted to exploit his official office for private gain in multiple corrupt schemes.  The indictment was preceded by a series of articles in the Boston Globe, an investigation by the Enforcement Division of the Massachusetts State Ethics Commission, a federal grand jury investigation and a search of Joyce's law office in February, 2016.

The first alleged scheme involves quid pro quo agreements with an energy insurance brokerage company which, for the time being, will remain anonymous and will hereinafter be referred to as "EIB".  According to the government, Joyce agreed to sponsor, file, amend and vote on property-assessed-clean-energy ("PACE") legislation that benefitted EIB in exchange for monthly cash payments and EIB common stock.  In addition, the indictment

alleges that Joyce and EIB's CEO agreed that Joyce would act in his official capacity to influence the Massachusetts Division of Insurance ("DOI") to act favorably toward EIB.

In the second alleged scheme, Joyce accepted privately held EIB common stock from the EIB CEO in exchange for Joyce's official action with respect to PACE and the DOI. When the custodian of Joyce's IRA account would not authorize a purchase of EIB common stock as a tax-free rollover using Joyce's existing simplified employee pension IRA ("SEP—IRA") assets, Joyce orchestrated a purchase of that common stock using fictitious retirement accounts he created for himself and his spouse.

The third alleged scheme involved payments by a coffee franchise owner to Joyce for non-existent legal services and free deliveries of hundreds of pounds of coffee in exchange for the promotion, sponsorship and filing of state legislation by Joyce for the benefit of the franchise owner.

Attorney Cooper began representing Joyce in March, 2015, after the Boston Globe began an investigation of his conduct as a senator, his law practice, alleged conflicts of interest and campaign finances. Cooper represented Joyce in his interaction with the Globe and with respect to a separate investigation by the Massachusetts Ethics Commission.

The Government contends that Joyce engaged Cooper to make false representations to the Globe and the Ethics Commission. Those statements include, <u>inter alia</u>, a letter to the Ethics Commission stating that Joyce purchased EIB common stock with funds from his SEP-IRA and an email to the Ethics Commission including copies of a fraudulently backdated invoice and checks related to the purchase of coffee. Defendant denies that those communications included false statements.

The Government filed the motion at issue in February, 2018. In addition to defendant's opposition to that motion, <u>amicus</u> briefs in support of defendant have been filed by the Massachusetts Bar Association and the Boston Bar Association.

## II. <u>Disqualification of Attorney Cooper</u>

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." That right to counsel attaches when an individual is arrested and held to answer criminal charges. <u>United States</u> v. <u>Gouveia</u>, 467 U.S. 180, 185-186 (1984). One element of that right is the "right of a defendant who does not require appointed counsel to choose who will represent him." <u>United States</u> v. <u>Gonzalez-Lopez</u>, 548 U.S. 140, 144 (2006).

A criminal defendant's absolute right to counsel "does not confer an absolute right to a particular counsel." <u>United States</u>

v. Diaz-Martinez, 71 F.3d 946, 949 (1st Cir. 1995) (citation
omitted) (internal quotation omitted).  A defendant cannot
insist upon representation by a particular attorney where such
representation "will obstruct reasonable and orderly court
procedure". United States v. Poulack, 556 F.2d 83, 86 (1st Cir.
1977).  In a similar vein, a court may disqualify a defendant's
attorney "where it finds either an actual conflict or a serious
potential conflict." United States v. Lanoue, 137 F.3d 656, 663
(1st Cir. 1998).

Nonetheless, the government may not infringe upon the right
to counsel of choice to gain a tactical advantage. United States
v. Diozzi, 807 F.2d 10, 13-14 (1st Cir. 1986).  Attorney
disqualification is a "drastic remedy", Fonten Corp. v. Ocean
Spray Cranberries, Inc., 469 F.3d 18, 23 (1st Cir. 2006), that
"should be a measure of last resort." Diozzi, 807 F.2d at 12.
Accordingly, "the government bears a heavy burden of
establishing that disqualification is justified." Id.

A.    Best Evidence Rule

The government contends that Joyce enlisted Attorney
Cooper's legal assistance to conceal and perpetuate the ongoing
criminal schemes charged in the indictment.  Accordingly, the
government argues, Joyce turned Cooper into a percipient witness
whom the government intends to call.  The defendant insists that
the government cannot demonstrate a legitimate need for Cooper's

-5-

testimony that would outweigh Joyce's Sixth Amendment right to counsel of his choice.

Prosecutors have an affirmative duty not to circumvent the protection afforded by the right to counsel. Maine v. Moulton, 474 U.S. 159, 171 (1985). Accordingly, attempts to call a defense attorney as a witness against his client are governed by the "best evidence rule":

> Where the government's proffer of a defense attorney's testimony will force the attorney's removal, the government may only call the attorney as a witness if, without his or her testimony, the government must settle for less than its best evidence.

United States v. Hallock, 941 F.2d 36, 44 (1st Cir. 1991) (citing United States v. Cortellesso, 663 F.2d 361, 363 (1st Cir. 1981)) (internal quotation marks omitted).

Defendant has agreed to stipulate that he "reviewed, approved and authorized the submission of the specific statements" sent by Attorney Cooper to the Ethics Commission. He has also agreed to stipulate that he waives any right to rely on the advice of Cooper or the law firm of Todd & Weld concerning the disputed statements and that he knowingly, voluntarily and with advice of independent counsel waives any right to contend that Cooper represented him while under a conflict of interest.

At the hearing on the motion to disqualify, the government argued that the stipulation was insufficient because it does not state that 1) Cooper disclosed to the Ethics Commission all

material information that Joyce provided to him or 2) Joyce is the sole source of information provided to the Commission. Those concerns are unavailing.  Joyce now stipulates that he is the sole source of the statements concerning his state of mind and contends that the fact that Cooper cannot testify that Joyce was the sole source of every statement is not a material factor in the pending motion to disqualify.  The government offers no authority to the contrary.  Given Joyce's revised stipulation, the government has failed to show that Cooper's testimony is necessary to its case.

The drastic remedy of disqualification is unwarranted in light of Joyce's stipulation. See United States v. Diozzi, 807 F.2d 10, 16 (reversing, as constitutional error, disqualification of defense counsel where stipulation was adequate substitute for attorney's testimony).  The Diozzi court rejected the government's argument that the jury could be confused by the written submission and that defense counsel's testimony would aid the effective ascertainment of truth, concluding that the government "failed to support the disqualification order on best evidence grounds." Id. at 14.

As in Diozzi, the government here has failed to demonstrate that, without Cooper's testimony, it will have to settle for less than its best evidence.

**B.    Conflict of Interest**

The government submits that Cooper must be disqualified because Joyce enlisted him as an active participant in concealment of the ongoing racketeering activity which created a potential or actual conflict of interest.  Defendant responds that his stipulation waiving the alleged conflict should resolve the matter.

Although a presumption exists in favor of defendant's counsel of choice, that presumption "may be overcome by a showing of a serious potential for conflict." In re Grand Jury Proceedings, 859 F.2d 1021, 1024 (1st Cir. 1988).  Where a defendant presents an advice-of-counsel or lack of mens rea defense, a serious conflict of interest arises. See United States v. Swafford, 512 F.3d 833 (6th Cir. 2008).  At the same time, a defendant may waive a conflict of interest and choose to retain that attorney, so long as that waiver is "knowing, intelligent and voluntary". Yeboah-Sefah v. Ficco, 556 F.3d 53, 68 (1st Cir. 2009).

Because the decision to disqualify counsel is made in the proverbial heat of battle based upon "facts presented at the time of the disqualification motion", United States v. Alfonzo-Reyes, 592 F.3d 280, 294 (1st Cir. 2010), district courts have "substantial latitude" in refusing waivers of conflicts of

interest where an actual or potential conflict exists.  Wheat v.
United States, 486 U.S. 153, 163 (1988).

The government correctly notes that this Court is not
obligated to accept a defendant's waiver and that other courts,
see, e.g., United States v. Schwarz, 283 F.3d 76, 95-96 (2d Cir.
2002), have found that certain actual or potential conflicts
cannot be waived.

Unwaivable conflicts involve situations in which an
"attorney has reason to fear that a vigorous defense of the
client might unearth proof of the attorney's criminality." See
United States v. Saccoccia, 58 F.3d 754, 772 (1st Cir. 1995).
The government has proffered no evidence that Attorney Cooper is
involved in any criminal activity.  Just as in the earlier
proceeding when the defendant moved to quash a grand jury
subpoena against Attorney Cooper, see In re Grand Jury Subpoena
(Brian Joyce), 273 F. Supp. 3d 296, 303-04 (D. Mass. 2017), the
government reiterated at the motion hearing that it does not
"have information right now that indicates that Mr. Cooper
knowingly participated in the crime."  Accordingly, the Court
finds that Joyce is legally permitted to waive any actual or
potential conflict.

The government contends that even if Cooper does not
testify, he may improperly act as an "unsworn witness" who could
delicately

> impart to the jury his first-hand knowledge of the events
> without having to swear an oath or be subject to cross-
> examination.

See <u>Fonten Corp.</u>, 469 F.3d at 23 (quoting <u>United States</u> v.
<u>Locascio</u>, 6 F.3d 924, 933 (2d Cir. 1993)).

Should Cooper act in such a manner he would be subject to a
renewal of the motion to disqualify.  Such a scenario can
perhaps be avoided, however, by a directive to trial counsel to
refer to Cooper as "the attorney who was representing the
defendant at the time."

Finally, the government submits that Cooper's defense of
Joyce may be improperly restricted by Cooper's self-interest and
the Massachusetts Rules of Professional Conduct.  Both
contentions are misplaced.  First, the government has yet to
produce any evidence that Cooper acted illegally.  Second,
Massachusetts attorneys have no independent duty to investigate
the truth of a client's representations. <u>See</u> <u>Commonwealth</u> v.
<u>Mitchell</u>, 438 Mass. 535, 546-47 (2003) (explaining that "such a
duty would be incompatible with the fiduciary nature of the
attorney-client relationship").  Instead, attorneys must "act in
good faith based on objective circumstances firmly rooted in
fact." <u>Id.</u> at 546.  There is no indication thus far that
Attorney Cooper has run afoul of his ethical responsibilities in
this case.

Provided defendant takes full responsibility for and adopts all statements Attorney Cooper made on his behalf and disclaims any reliance on an advice-of-counsel or mens rea defense, the Court perceives no need for Cooper to testify in this case. Nor does the Court have grounds to believe that Attorney Cooper has engaged in any criminal behavior such that the alleged conflict of interest would be rendered unwaivable. Joyce has submitted the proposed affidavit signed under the penalty of perjury and his waiver, made with the advice of independent counsel is a knowing, intelligent and voluntary waiver. In light of defendant's stipulation and waiver, the government's motion will, with respect to the requested disqualification of Attorney Cooper, be denied.

## III. Issuance of Subpoena, In Camera Review and Ex Parte Hearing

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981) (citing 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961)). It serves to encourage disclosures between attorney and client which enable the client to conform his conduct to the "requirements of the law and to present legitimate claims or defenses when litigation arises." United States v. Massachusetts Inst. of Tech., 129 F.3d 681, 684 (1st Cir. 1997).

The crime-fraud exception to the attorney-client privilege assures that secrecy provided by the privilege does not extend to "communications made for the purpose of getting advice for the commission of a fraud or crime." United States v. Zolin, 491 U.S. 554, 563 (1989) (quoting O'Rourke v. Darbishire [1920] A.C. 581).  The exception applies if, inter alia, a client seeks the services of a lawyer "to enable or aid the client to commit what the client" knows or reasonably should know to be a crime or fraud. United States v. Rakes, 136 F.3d 1, 4 (1st Cir. 1998).

To invoke the crime-fraud exception successfully, the government must make a prima facie showing:

> (1) that the client was engaged in (or was planning) criminal or fraudulent activity when the attorney-client communications took place; and (2) that the communications were intended by the client to facilitate or conceal the criminal or fraudulent activity.

In re Grand Jury Proceedings (Gregory P. Violette), 183 F.3d 71, 75 (1st Cir. 1999).

In contrast to the analysis of the motion to disqualify above, the attorney's mens rea is irrelevant to the issue at hand. See id. at 79 ("The case law dealing with the crime-fraud exception in the attorney-client context makes it transparently clear that the client's intentions control.").  The government must show that there is a "reasonable basis" to believe that the client used the lawyer's services to foster a crime or fraud. In re Grand Jury Proceedings, 417 F.3d 18, 23 (1st Cir. 2005).

"[N]either speculation nor evidence that shows only a distant likelihood of corruption is enough." Id.

**A. Zolin review**

**1. Step One – Good faith belief by a reasonable person**

Upon a proper showing by the government, judges have discretion to review privileged materials in camera to determine whether the crime-fraud exception applies. See Zolin, 491 U.S. at 572. A "lesser evidentiary showing" is needed for an in camera review than to obviate the attorney-client privilege. In re Grand Jury Proceedings, 417 F.3d 18, 22 (1st Cir. 2005) (citing Zolin, 491 U.S. at 572). To justify a Zolin review, the government must set forth a factual basis

> to support a good-faith belief by a reasonable person [that] in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.

Zolin, 491 U.S. at 572 (emphasis added); see also In re Grand Jury Proceedings, 417 F.3d 18, 22 (1st Cir. 2005) (observing that use of the term "may" counsels a "very relaxed test" and, because only the judge is afforded such access, properly so).

The Court finds that the indictment provides a good faith reason to believe that Joyce retained and instructed Cooper with the intent of committing or fostering the commission of a crime. Count 70 of the indictment alleges that the letter from Joyce, via his attorney, to the Ethics Commission in January, 2016, discussing the PACE bills and the DOI proceedings constitutes honest services fraud. Count 79 alleges that the email from

Joyce, via his attorney, to the Ethics Commission in February, 2016, with respect to the exchange of coffee for legal services also constitutes honest services fraud. Those acts are also deemed to be racketeering acts. Both allegations satisfy the good-faith belief standard. The allegedly backdated invoice for coffee, in particular, bears a close resemblance to the allegedly backdated reorganization at issue in Gorski. See United States v. Gorski, No. CRIM. 12-10338-FDS, 2014 WL 4656576, at *3 (D. Mass. Sept. 12, 2014), aff'd in relevant part 807 F.3d 451 (1st Cir. 2015).

In Gorski, the district court, after an in camera Zolin review, ordered production of materials under the crime-fraud exception. In that case, a defendant retained lawyers to perform a sham corporate reorganization to preserve a false outward appearance of compliance with federal regulations. Gorski, 807 F.3d at 461. The law firm submitted fraudulently backdated documents and a false affidavit to the United States Small Business Administration. Id. at 456. The district court granted the government's motion to conduct a Zolin review of the law firm's records related to the reorganization but quashed the subpoena with respect to communications between the defendant and his personal attorney as to the restructuring. The First Circuit Court of Appeals ("First Circuit") affirmed the district court with respect to its Zolin Step 1 and Step 2 analysis of

the law firm subpoena. Id. at 459-62. It reversed the district court, however, insofar as the district court quashed the subpoena of the defendant's personal attorney, explaining that the relevant fact was not whether the personal attorney "was involved in the submissions" to the Small Business Administration, but rather whether the defendant intended to use the attorney's advice to "perpetuate an ongoing scheme." Id. at 462.

Defendant's numerous attempts to distinguish Gorski and rebut the government's theory are unavailing.

Defendant contends that the indictment is insufficient to satisfy the government's evidentiary burden. In Gorski, the First Circuit affirmed the district court's reliance on the indictment to provide "a reasonable basis to believe that [defendant] was engaged in criminal or fraudulent activity." Id., 807 F.3d at 462. By contrast, defendant maintains, without citation to binding case law, that this Court should create a higher burden for the government because the Sixth Amendment right to counsel is in play.

That argument is deficient on both the law and the facts. First, the distinction between transactional counsel and defense counsel in Gorski was not as clear as defendant opines. See Transcript of Status Conference held on August 7, 2014, United States v. Gorski, No. CRIM. 12-10338-FDS, ECF 124 at 12

("[T]here appears to have been some cross-pollination between, you know, the civil attorneys at [the law firm] and defense counsel in this criminal case."). Although the defendant's trial counsel was not the advising attorney and had no role in the corporate restructuring, she was a partner at the subpoenaed law firm at the time the government's motion to disqualify was filed. See United States v. Gorski, 36 F. Supp. 3d 256, 261 (D. Mass. 2014).

Second, the Sixth Amendment was, in fact, implicated in Gorski because the district court addressed both the Zolin review and the conflict-of-interest waiver at the same hearing. See Transcript of Status Conference held on August 7, 2014, United States v. Gorski, No. CRIM. 12-10338-FDS, ECF 124 at 25.

Third, defendant inappropriately applies the disqualification standard, which contemplates the attorney's knowledge and complicity, to the crime-fraud standard, which conversely focuses solely on the intent of the defendant. See In re Grand Jury Subpoena (Brian Joyce), 273 F. Supp. 3d 296, 303 (D. Mass. 2017) ("[T]he actual involvement of the attorney in particular acts has no necessary bearing on whether the two prongs of the crime-fraud exemption are met. What matters is the client's intent.") (citing Gorski, 807 F.3d at 462).

In the alternative, defendant asserts that the government may not utilize a Rule 17 subpoena because Fed. R. Crim. P. 16

is applicable and subsection (b)(2) of that rule provides that

"a statement made to . . . the defendant's attorney . . . by the

defendant [is] not subject to disclosure."  That argument is

precluded by binding circuit precedent.  See Gorski, 807 F.3d at

456 (affirming, in relevant part, the government's issuance of

subpoenas to defense counsel for Zolin review under Fed. R.

Crim. P. 17(c)).

Finally, Joyce maintains that the government is merely

renewing a motion that was decided against it in July, 2017.

The Court did then grant, in part, the attorney's motion to

quash the grand jury subpoena on the ground that the information

sought was protected by the attorney-client privilege.  See In re

Grand Jury Subpoena (Brian Joyce), 273 F. Supp. 3d at 296.  It

did so, however, because the government failed to make a

sufficient factual showing and not because the crime-fraud

exception was inapplicable.  The Court noted that

> According to the government, the Attorney produced a
> backdated invoice and a check as evidence that the Client
> had paid for certain goods in December 2014.  If true, this
> would meet both prongs of the crime-fraud exemption.

In re Grand Jury Subpoena (Brian Joyce), 273 F. Supp. 3d at 303.

By contrast, the indictment now constitutes evidence that was

not present at the time of the motion to quash the grand jury

subpoena.  Cf. Kaley v. United States, 134 S. Ct. 1090, 1098

(2014) ("We have found no authority for looking into and

revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof.") (citing Costello v. United States, 350 U.S. 359, 362-63 (1956)) (internal quotation marks omitted).  Moreover, the Zolin Step One showing is a lower bar than that required to obviate the privilege.  Thus, this finding is fully in accord with this Court's prior holding.

The grand jury indictment supports a good-faith belief that in camera review may reveal evidence that the crime-fraud exception applies.

**2. Step Two – Whether to conduct an in camera review**

If a "good-faith belief" showing is made, the decision whether to perform an in camera review "rests in the sound discretion of the district court." United States v. Zolin, 491 U.S. at 572.  The Court should consider

> among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply.

Id.

The government's original subpoena Schedule A was notably overbroad, requesting, as it did, documents "from January 1, 2013, through the present".  Defense counsel estimated

compliance would have required the production of ten thousand pages. The government's revised Schedule A is more reasonable in both duration and scope. The prosecution has not been fully forthcoming as to the relative importance to the case of the privileged information but it is clear that such information is critical to certain counts of the indictment.

Defendant correctly observes that the actual submissions to the Ethics Commission comprise only two of the 113 counts of the indictment (and two racketeering acts). Nonetheless, the backdated coffee invoice is a core allegation in this case, as are the allegedly false statements submitted with respect to EIB. In light of the government's revised and circumscribed Schedule A, the Court finds that an in camera review would be reasonable under the circumstances. Cf. Gorski, 807 F.3d at 460-62 (affirming district court's determination that Zolin review was appropriate).

Defendant further maintains that, even if this Court should decide to conduct an in camera examination, it should limit production pursuant to the subpoena to statements to the Ethics Commission that were actually false. That argument is unpersuasive. As an initial matter, if, as the indictment alleges, Joyce enlisted Cooper to submit a backdated coffee invoice and check to the Ethics Commission, Joyce used Cooper for the purpose of committing a crime or fraud, triggering the

exemption.  Second, defendant submits that Joyce's statements
regarding whether his contacts with the DOI were "ministerial"
cannot be false, because "legal arguments based upon facts are
not true or false."  Although defendant cites a few tort cases
distinguishing statements of fact from statements of opinion in
the realm of negligent misrepresentation and defamation, he
provides no case law declaiming that objectively erroneous legal
opinions offered in bad faith cannot be false.  This Court
declines the invitation to create that new rule.  Finally,

> under principles of subject-matter waiver, the waiver of
> privilege applies as to the entire subject matter, not a
> narrowly defined subset of documents.

United States v. Gorski, No. CRIM. 12-10338-FDS, 2014 WL
4656576, at *5 (D. Mass. Sept. 12, 2014), aff'd in relevant
part, 807 F.3d 451 (1st Cir. 2015) (citation omitted).

Accordingly, the Court finds that it is reasonable to
conduct an in camera review of the documents described in the
government's revised proposed Schedule A.

### 3. Next steps

The third step, should the Court perform a Zolin review, is
to determine which, if any, communications fall within the
crime-fraud exception.  If the Court finds such communications,
it is to hold an ex parte hearing to allow the party holding the
privilege to be heard on the subject before the Court. See
Gorski, 807 F.3d at 457.

The Court reiterates that a _Zolin_ review is initiated by the low evidentiary standard of a "good faith belief by a reasonable person." _Zolin_, 491 U.S. at 572. The Court makes no assumption as to the import of the _in camera_ examination or its bearing upon the ultimate issues in this case and the Court is cognizant that the government has not alleged (much less proffered facts of) improper conduct on the part of defense counsel.

## VI. __Amici curiae__

In addition to an affidavit prepared by former Massachusetts Supreme Judicial Court Associate Justice Robert J. Cordy, two friend of the court briefs were filed in opposition to the government's motion. The first was submitted by the Massachusetts Bar Association, the Massachusetts Association of Criminal Defense Lawyers, the ACLU of Massachusetts and 71 prominent criminal defense attorneys. The second was submitted by the Boston Bar Association.

The briefs address the "serious policy implications" that the government's position would have on the administration of justice. The Cordy Affidavit highlights the value of pre-indictment and pre-charging discussions between lawyers representing the targets of government investigations and the government agents and lawyers conducting those investigations. The Massachusetts Bar Association brief warns against the risk

that the "government might seek to disqualify criminal defense counsel for tactical reasons" while the Boston Bar Association brief contends that pre-indictment statements to a government agency implicate the First Amendment right to petition the government.  It insists that the First Amendment protects "some falsehood in order to protect speech that matters."

The warnings of the amici give pause to the government's motion to disqualify but are less concerned about a Zolin review.  This Court's decision will not facilitate the government's "veto [of] a defendant's counsel of choice" but the government has convinced a grand jury that there is probable cause to believe defendant enlisted an attorney for the purpose of committing a crime or fraud so it will issue its toned-down subpoena.  During the in camera review, the Court will either determine that the crime-fraud exception does not apply (in which case the status quo will continue) or that the crime-fraud exception applies (in which case the defendant was not entitled to the attorney-client privilege in the first place). Cf. Clark v. United States, 289 U.S. 1, 14 (1933) (explaining privilege does not apply "where the relation giving birth to it has been fraudulently begun or fraudulently continued").

Even where the crime-fraud exception applies, a defendant's waiver of conflict of interest is foreclosed only where the attorney herself commits unlawful acts.  The Boston Bar brief

acknowledges that the First Amendment offers no protection where a "lawyer knowingly communicated false information on behalf of his client."  Furthermore, a finding at this time that there is a good-faith basis to believe Joyce intended to use the services of counsel to foster a crime or fraud is not a finding that the crime-fraud exemption automatically applies. See United States v. Edgar, 82 F.3d 499, 508-509 (1st Cir. 1996) (observing that "[t]he third line of defense [to protect defendant's privilege] is that there will ultimately be a disinterested judicial determination of the issue").

Accordingly, the amici briefs are carefully noted and the Court is confident that a Zolin review will not precipitate the parade of horribles foretold therein.

**ORDER**

For the foregoing reasons, the government's motion to disqualify Attorney Howard M. Cooper and request for authorization to issue a subpoena to him (Docket No. 49) is, with respect to the motion to disqualify, **DENIED**, and is, with respect to the issuance of a subpoena for <u>in camera</u> review, **ALLOWED**.

Defendant shall produce documents pursuant to the subpoena on or before Friday, June 1, 2018.

**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated May 4, 2018